Gerlinda MARTIN and Earl E. Martin *v.*
James ARTHUR, M.D., Allan C. Gocio, M.D., and
Hot Springs Neurosurgery Clinic, P.A., and Calcitek, Inc.

99-302                                    3 S.W.3d 684

Supreme Court of Arkansas
Opinion delivered November 11, 1999

*Wise Law Firm*, by: *George R. Wise, Jr.*, for appellant.

*Mitchell, Williams, Selig, Gates & Woodyard, P.L.L.C.*, by: *Lyn P. Pruitt* and *Mark N. Halbert*, for appellee Calcitek, Inc.

*Friday, Eldredge & Clark*, by: *William M. Griffin III* and *Jason B. Hendren*, for appellees James Arthur, M.D., Allan Gocio, M.D., and Hot Springs Neurosurgery Clinic, P.A.

R OBERT L. BROWN, Justice. Appellants Gerlinda Martin and Earl E. Martin, who are wife and husband, appeal the trial court's order of summary judgment in favor of appellees James Arthur, M.D., Allan Gocio, M.D., and Hot Springs Neurosurgery Clinic, P.A., and the order of dismissal in favor of appellee Calcitek, Inc. The Martins contend that the trial court erred in not acknowledging that fraud and fraudulent concealment had tolled the medical malpractice statute of limitations in the case of the physicians and clinic and that the trial court further erred in finding that the product-liability statute of limitations had run in the case of Calcitek. We affirm the order of summary judgment relating to the physicians and the clinic. We reverse the trial court's order with respect to Calcitek and remand for further proceedings.

On December 5, 1991, Gerlinda Martin underwent a cervical spine fusion. Dr. Gocio, with the assistance of Dr. Arthur, performed the surgery and used a hydroxylapite known as Orthoblock as an artificial ceramic block between her vertebrae. On June 24, 1993, the Orthoblock was surgically removed. On September 17, 1996, the Martins filed a complaint against Doctors Gocio and Arthur and the Neurosurgery Clinic and asserted claims of medical malpractice, battery, fraud, fraudulent concealment, outrage, and loss of consortium, all in connection with the 1991 implantation of

the Orthoblock. They alleged that Orthoblock was a bone graft substitute used in dental procedures and was experimental when used in cervical fusions. They also claimed that Calcitek, the manufacturer and supplier of Orthoblock, knew or should have known that its product was being used in back operations. They further asserted that Orthoblock was brittle and fractured easily and, as a result, was defective and unreasonably dangerous for use in cervical fusions.

Doctors Gocio and Arthur and the clinic moved for summary judgment on the grounds that the negligence suit against them was barred by the statute of limitations. Calcitek also moved to dismiss the Martins' complaint because the limitations period had run. The trial court granted both motions in separate orders. The Martins appealed the trial court's orders to the court of appeals, and that court affirmed. *Martin v. Arthur*, 65 Ark. App. 276, 986 S.W.2d 143 (1999). On April 15, 1999, this court granted the Martins' petition for review.

## I. Medical Malpractice

The Martins first urge that fraud and fraudulent concealment should have tolled the statute of limitations with respect to the claims against Doctors Gocio and Arthur and the clinic, including medical malpractice. Primarily, they contend that fact questions remain to be resolved concerning the alleged fraudulent concealment perpetrated by Dr. Gocio, who failed to inform Gerlinda Martin of the risk involved in the Ortholock implantation. They assert that he was, in fact, conducting an experimental procedure by implanting Orthoblock in her spine. According to the Martins, he never told her that he was using Orthoblock.

When this court grants review following a decision by the court of appeals, we review the case as if it had been originally filed in our court. *See Hamilton v. Barrett*, 337 Ark. 460, 989 S.W.2d 520 (1999). The issue in this case is whether the trial court erred in granting summary judgment to the physicians and the clinic. In *Adams v. Arthur*, 333 Ark. 53, 969 S.W.2d 598 (1998), this court stated the standard of review for a grant of summary judgment:

> The law is well settled that summary judgment is to be granted by a trial court only when it is clear that there are no

genuine issues of material fact to be litigated, and the party is entitled to judgment as a matter of law. *Wallace v. Broyles,* 331 Ark. 58, 961 S.W.2d 712 (1998), *supp. opinion on denial of reh'g,* 332 Ark. 189 (1998). Once the moving party has established a prima facie entitlement to summary judgment, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact. *Id.* On appellate review, this court determines if summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of the motion leave a material fact unanswered. *Id.* This court views the evidence in a light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. *Id.* Our review focuses not only on the pleadings, but also on the affidavits and other documents filed by the parties. *Id.*

*Adams,* 333 Ark. at 62, 969 S.W.2d at 602.

We then discussed the statute-of-limitations defense:

When the running of the statute of limitations is raised as a defense, the defendant has the burden of affirmatively pleading this defense. *First Pyramid Life Ins. Co. v. Stoltz,* 311 Ark. 313, 843 S.W.2d 842 (1992), *cert. denied,* 510 U.S. 908 (1993). However, once it is clear from the face of the complaint that the action is barred by the applicable limitations period, the burden shifts to the plaintiff to prove by a preponderance of the evidence that the statute of limitations was in fact tolled. *Id.* Fraud suspends the running of the statute of limitations, and the suspension remains in effect until the party having the cause of action discovers the fraud or should have discovered it by the exercise of reasonable diligence. *First Pyramid, supra.* Although the question of fraudulent concealment is normally a question of fact that is not suited for summary judgment, when the evidence leaves no room for a reasonable difference of opinion, a trial court may resolve fact issues as a matter of law. *Alexander v. Flake,* 322 Ark. 239, 910 S.W.2d 190 (1995).

*Adams,* 333 Ark. at 63, 969 S.W.2d at 602-603.

Following these discussions, we proceeded in *Adams* to address what constitutes fraudulent concealment. In order to toll the statute of limitations, we said that the plaintiffs were required to show something more than a continuation of a prior nondisclosure. We said that there must be evidence creating a fact question related to "some positive act of fraud, something so furtively planned and

secretly executed as to keep the plaintiff's cause of action concealed, or perpetrated in a way that it conceals itself." *Adams*, 333 Ark. at 68, 969 S.W.2d at 605, *quoting Norris v. Bakker*, 320 Ark. 629, 633, 899 S.W.2d 70, 72 (1995).

■ In the case before us, Gerlinda Martin submitted an affidavit in opposition to summary judgment in which she enumerated her bases for claiming fraud. In examining the twenty assertions she makes, we conclude that they all related to a failure of the physicians and clinic to inform or disclose. None of the points rise to the level of a positive act of fraud. Rather, they represent and support a continuation of prior nondisclosure which we made clear in *Adams* is insufficient to raise a fact question relative to fraudulent concealment.

We affirm the trial court's grant of summary judgment.

## II. Product Liability

The Martins next claim that a fact issue exists regarding when Gerlinda Martin knew that she was harmed by Orthoblock. According to their theory, the date of the Orthoblock implantation in 1991 should not be the starting point for the running of the statute of limitations. They contend that the statute should start to accrue when she learned the nature of the harm that had been done to her. We agree.

■ We review a trial court's decision on a motion to dismiss by treating the facts alleged in the complaint as true and viewing them in the light most favorable to the plaintiff. *See Efurd v. Hackler*, 335 Ark. 267, 983 S.W.2d 386 (1998). A trial court need only look to the allegations in the complaint to decide a motion to dismiss. *Id.* In testing the sufficiency of a complaint on a motion to dismiss, all reasonable inferences must be resolved in favor of the complaint. *See Shepherd v. Washington County*, 331 Ark. 480, 962 S.W.2d 779 (1998).

The statute of limitations for product-liability actions reads: "All product liability actions shall be commenced within three (3) years after the date on which the death, injury, or damage complained of occurs." Ark. Code Ann. § 16-116-103 (1987). Relying on this statute, the trial court found:

6. Because Plaintiffs complain of alleged damage caused by improper implantation of "Orthoblocks," any cause of action for personal injury began to accrue as of the date of surgery in December 1991.

7. Therefore, the filing of Plaintiffs' cause of action on September 17, 1996, was outside the applicable three year statute of limitations for products liability actions.

8. The Court also finds that Plaintiffs' cause of action is not saved by the 'discovery rule' as the Arkansas Supreme Court has declined to adopt such a rule in products liability cases.

9. Even if Plaintiffs' cause of action for products liability could be tolled by the "discovery rule." Plaintiffs should have known of the alleged damage well before September 17, 1993.

This court has had occasion to discuss the three-year statute of limitations in a product–liability case. *See Spickes v. Medtronic, Inc.,* 275 Ark. 421, 631 S.W.2d 5 (1982). In *Spickes,* a defective pacemaker manufactured by Medtronic was implanted in Spickes in 1975. On October 5, 1977, the pacemaker was removed and replaced by a new pacemaker, also manufactured by Medtronic. At that time, Spickes knew that the original pacemaker had been defective. In 1980, Spickes learned more about the defectiveness of the 1975 pacemaker. On October 28, 1980, he sued Medtronic for damages caused by the defective pacemaker which was more than three years after the removal surgery. Medtronic pled the three-year statute of limitations and moved for summary judgment. The trial court granted summary judgment and found that the statute of limitations barred Spickes's suit. This court affirmed the trial court, and said:

Medtronic committed no tortious act in 1980; Spickes simply found out more about what had been done three years earlier. The statute of limitations begins to run when the negligent damage occurs, not from the time the full extent of the injury is ascertained. *Field v. Gazette Publishing Co.,* 187 Ark. 253, 59 S.W.2d 19 (1933). Moreover, for the reasons given in *Lisenby v. Farm Bureau Mut. Ins. Co.,* 245 Ark. 144, 431 S.W.2d 484 (1968), a single cause of action cannot be split. *Spickes knew in 1977 that the first pacemaker was faulty*; he cannot manufacture a second cause of action on the basis of additional information he learned three years later. (Emphasis added.)

*Id.* at 423, 631 S.W.2d at 6-7. The language quoted above appears internally inconsistent and is not a model of clarity. We referred to the date of "negligent damage" as the beginning date, which indicated there must be some damage to the patient for the statute to commence running. And we cited as authority a negligence case (*Field v. Gazette Publishing Co., supra*), which dealt with the statute of limitations for negligence. It is well settled that the statute in negligence cases begins to run from the date the negligent act is committed. *See Calcagno v. Shelter Mut. Ins. Co.*, 330 Ark. 802, 957 S.W.2d 700 (1997); *Flemens v. Harris*, 323 Ark. 421, 915 S.W.2d 685 (1996). We then went forward and referenced the date when Spickes *learned* of the defective pacemaker in 1977 as being the pivotal date. The statute of limitations involved in *Spickes* was the product-liability statute enacted as part of the Product Liability Act in 1979. *See* 1979 ACTS 511. Thus, it appears that we stated in *Spickes* that the limitations period commenced running when he learned of the damaged pacemaker in 1977 and that he could not manufacture a second cause of action in 1980 based on new information. That has certainly been the interpretation of *Spickes* by other courts and commentators. *See, e.g., Mulligan v. Lederle Laboratories*, 786 F.2d 859 (8th Cir. 1986); *Lack of Knowledge of Product's Defect*, 91 A.L.R.3d 991 (1999 Supp. p. 69).

Subsequent to our decision in *Spickes v. Medtronic, Inc., supra*, the Eighth Circuit Court of Appeals discussed *Spickes* in connection with a federal-product liability action. *See Mulligan v. Lederle Laboratories, supra*. Though not precedent for this court, we find the Eighth Circuit's analysis to be instructive. In *Mulligan*, the plaintiff (Mulligan) brought a product-liability action against the defendant drug manufacturer (Lederle), which produced Varidose to break up blood clots. The drug eventually caused chronic kidney problems (nephritis) in Mulligan. She sued, and a jury awarded Mulligan compensatory and punitive damages. On appeal, Lederle contended that Mulligan's cause of action was barred by the Arkansas product-liability statute of limitations. The Eighth Circuit disagreed and held that Mulligan's action was not barred. In reaching this conclusion, the court first looked to the limitations statute (§ 16-116-103) and observed:

> The statute clearly rejects the concept found in some older Arkansas cases that a cause of action accrues when the tort is complete; for example in an automobile accident case "at the

> moment the car was turned over," *Faulkner v. Huie*, 205 Ark. 332, 336, 168 S.W.2d 839, 841 (1943). Obviously the plaintiff must suffer some harm before the new limitations period starts to run. This also contrasts sharply with the wording of the two-year limitations period for medical malpractice, which begins at "the date of the wrongful act complained of, *and no other time*." Ark. Stat. Ann. § 37-205 (emphasis added).

*Id.* at 862.

The Eighth Circuit next discussed the *Spickes* decision and concluded that this court held that the time the limitations period begins to run in a product-liability case is when there is a manifestation of harm to the plaintiff. The court discussed the necessary level of manifestation of that harm, recognizing that this court in *Spickes* concluded that knowledge of the full extent of the injury was not required. The Eighth Circuit then looked to one of its previous cases, *Schenebeck v. Sterling Drug Co.*, 291 F. Supp. 368 (E.D. Ark. 1968), *aff'd* 423 F.2d 919 (8th Cir. 1970), for guidance on the subject. In *Schenebeck*, the plaintiff had taken arthritis medication for five years (1958-1963). She had experienced temporary blurring of her vision, but it was not until 1966 that she realized her eyes had been permanently damaged. The federal district judge acknowledged the slow and insidious side effect of the medication and suggested that the moment the statute of limitations began to accrue was when the plaintiff became aware of her condition, that is, when she knew she had been permanently damaged by the medication. Using the *Schenebeck* reasoning, the Eighth Circuit concluded in *Mulligan* that a slight manifestation of harm can begin the running of the statute, if the manifestation reveals the nature of the harm. The court acknowledged that knowing the nature of the harm was not the same as knowing the full extent of the harm, which this court held in *Spickes* was not required.

Though there is not unanimity in other jurisdictions as to when the statute of limitations begins running in product-liability cases, courts generally agree that when injury is suffered from a product without perceptible trauma to the plaintiff, no action in tort begins to accrue until the plaintiff knew, or by the exercise of reasonable diligence should have discovered, the cause of the injury. *See, generally,* Jane Massey Draper, Annotation, *Lack of Knowledge of Product's Defect*, 91 A.L.R.3d 991, 994-995 (1979). An illustration of this reasoning is found in the intrauterine-device cases. Various

courts have concluded that the cause of action accrued not at the time of manufacture of the product or when the device was inserted in the plaintiff, but rather when the injury was made known to the plaintiff. *See, e.g., Kristeller v. A.H. Robbins, Inc.*, 560 F. Supp. 831 (N.D. NY 1983); *Fitzpatrick v. A.H. Robbins, Inc.*, 99 A.D.2d 478, 470 NY S.2d 414 (1984); *Hansen v. A.H. Robbins, Inc.*, 113 Wis.2d 550, 335 N.W.2d 578 (1983).

We adopt the reasoning of the Eighth Circuit in *Mulligan* and agree with its analysis of the *Spickes* case. We hold that in product–liability cases, the statute of limitations under § 16–116–103 does not commence running until the plaintiff knew or, by the exercise of reasonable diligence, should have discovered the causal connection between the product and the injuries suffered. This is the discovery rule, and applying it to the case at hand where there is a genuine issue of material fact regarding discovery, the trier of fact must determine when Gerlinda Martin was first made aware of the nature of the harm caused by Orthoblock or, alternatively, when she should have discovered the causal connection, for the statute of limitations to begin to run. As we said in *Spickes*, the full extent of the harm is not required; indeed, the manifestation of the nature of the harm done to her may be slight. Other jurisdictions concur that when there is an issue of fact over discovery, this is for the trier of fact to resolve. *See, e.g., Freedman v. Medtronic, Inc*, 171 A.D.2d 499, 567 N.Y. S.2d 421 (1991) (issue of material fact existed over when heart pacemaker malfunctioned which precluded summary judgment in favor of the manufacturer based on statute of limitations); *Aspegren v. Howmedica, Inc.*, 129 Ill. App. 3d 402, 472 N.E.2d 822 1984) (summary judgment inappropriate when issue was whether cause of action accrued when plaintiff saw x-ray of fractured metal hip prosthesis or after it was removed and plaintiff had an opportunity to examine it); *Perlov v. G.D. Searle & Co.*, 621 F. Supp. 1146 (D.C. Md. 1985) (question of fact as to whether cause of action accrued when plaintiff first developed infection from intrauterine device).

By using the date of the implantation of the Orthoblock in 1991 as opposed to Gerlinda Martin's awareness of the nature of the harm, the trial court's order of dismissal runs counter to this analysis. In deciding a 12(b)(6) motion, the trial court looks only to the allegations in the complaint and accepts them as true. *See Efurd*

*v. Hackler, supra.* We conclude that Calcitek's statute-of-limitations defense is not resolved by the allegations in the Martins' complaint.

But there is another aspect to the trial court's order. In the Martins' response to Calcitek's motion to dismiss, Gerlinda Martin attached affidavits averring that she did not learn about any injury caused by Orthoblock until 1996. In its reply to the Martins' response and brief, Calcitek attached medical reports and a newspaper article as exhibits to support its position that Gerlinda Martin had to know about the dangers of Orthoblock much earlier. We cannot tell from the dismissal order whether the trial court considered these matters which were extraneous to the complaint, but the trial court did find that Gerlinda Martin should have learned about Orthoblock's defectiveness more than three years before the Martins filed their complaint. This suggests that the trial court looked beyond the complaint in making this finding of fact and treated Calcitek's motion, in effect, as one for summary judgment. *See* Ark. R. Civ. P. 56(c); *Stapleton v. M.D. Limbaugh Constr. Co.*, 333 Ark. 381, 969 S.W.2d 648 (1998); *McQuay v. Guntharp*, 331 Ark. 466, 963 S.W.2d 583 (1998); *Clark v. Ridgeway*, 323 Ark. 378, 914 S.W.2d 745 (1996).[1] In *Clark v. Ridgeway, supra,* we stated that we would presume that such outside matters were considered by the trial court unless specifically excluded by the court and that the dismissal order was in fact one for summary judgment. We also said in *Clark* that mere exhibits attached to briefs should not be considered by the trial court for summary-judgment purposes. Assuming that the trial court converted Calcitek's motion to dismiss into one for summary judgment, there is clearly a genuine issue of material fact presented over when Gerlinda Martin discovered the harm done to her, thus rendering summary judgment at this stage inappropriate. *See, e.g., Freedman v. Medtronic, Inc., supra; Aspegren v. Howmedica, Inc., supra; Perlov v. G.D. Searle & Co., supra.*

We conclude that the Martins have stated a cause of action for product liability against Calcitek, and that the date the Orthoblock was implanted in 1991 has not been shown to be the date when Gerlinda Martin learned of the harm done to her. Moreover, whether the revelation of the nature of the harm done to Gerlinda Martin occurred more than three years before the filing of

---

[1] In their respective briefs, the Martins refer to the order of dismissal as one for summary judgment while Calcitek calls it an order of dismissal.

the Martins' complaint is a disputed issue of material fact. We reverse the order of dismissal and remand the complaint against Calcitek for further proceedings.

The Martins also contend that they did not waive their breach-of-warranty claim against Calcitek by failing to give notice prior to filing their complaint pursuant to Ark. Code Ann. § 4-2-607(3)(a) (Repl. 1991). Calcitek's motion to dismiss referred to both the product-liability claim and the breach-of-warranty claim. However, in granting the motion, the trial court did not specifically rule on the breach-of-warranty dispute. Hence, this court will not consider the matter, as the issue has been waived for purposes of appeal. *See Craig v. Taylor*, 323 Ark. 363, 915 S.W.2d 257 (1996); *Brumley v. Naples*, 320 Ark. 310, 896 S.W.2d 860 (1995); *Oglesby v. Baptist Med. Sys.*, 319 Ark. 280, 891 S.W.2d 48 (1995).

Affirmed in part. Reversed and remanded in part.

GLAZE and CORBIN, JJ., not participating.

Special Justice K. LeANNE DANIEL joins.

Special Justice NORMAN MARK KLAPPENBACH joins.