2010 Ark. App. 844

Alan SARGENT, Appellant

v.

Dr. William SPRINGER, Appellee.

No. CA 10–27.

Court of Appeals of Arkansas.

Dec. 15, 2010.

Michael R. Lipscomb, Michael Lipscomb & Associates, Hot Springs, for appellant.

J. Phillip Malcom, Timothy A. Steadman, Kutak Rock LLP, Little Rock, for appellee.

JOSEPHINE LINKER HART, Judge.

Alan Sargent appeals from the grant of summary judgment in favor of radiologist William Springer. The trial court found that Sargent's complaint was barred by the statute of limitations. On appeal, Sargent argues that summary judgment was inappropriate because there was a material fact in issue, and he was deprived of the opportunity to conduct discovery. We affirm.

On November 13, 2001, Sargent underwent gall bladder surgery. He experienced abdominal pain, and he returned to his surgeon, Dr. Marc Rogers. Sargent underwent a second surgery on October 23, 2003. A sponge that was left inside his abdominal cavity during the November 13, 2001 surgery was discovered and removed. Sargent sued Rogers and others for medical malpractice.

At the trial of Sargent's lawsuit, Springer was called as a defense witness. He testified that he performed a T-tube cho-

langiogram[1] on Sargent on November 28, 2001. Springer stated that the study was a routine, post-surgery practice intended to detect the presence of stones in the bile duct. As part of the exam, a "scout film" was taken, to detect opaque stones that would possibly be masked when contrast was injected for the rest of the study.

Springer was asked to review the images that composed the cholangiogram. The film revealed the presence of two large stones. He was then directed to a "light-colored shape" that appeared on one of the films. He did not recall whether or not he told Rogers about the presence of the shape, and he admitted that he did not put it in his report. When pressed, Springer admitted that "to a reasonable degree of medical certainty" the light colored object was the radiopaque marker on a lap sponge. He also conceded that finding a sponge would be "important" and that he would normally have included it in his report. Springer also admitted that he had recently reviewed the cholangiogram just prior to his testimony at the behest of one of his "colleagues."

After the trial, on June 16, 2009, Sargent filed a medical-negligence lawsuit against Springer. Springer affirmatively pled the statute of limitations in his answer. Springer moved for summary judgment on July 15, 2009. On July 22, 2009, Sargent amended his complaint to allege that Springer conspired with Rogers to "hide the fact that there was a sponge left in [his] body." Sargent also alleged that Springer "fraudulently concealed that a sponge had been left in the Plaintiff's body." Springer successfully moved to quash Sargent's attempt to take his deposition. Sargent then answered Springer's summary-judgment motion, attaching an affidavit that stated that prior to Springer's trial testimony, he had no idea that the cholangiogram indicated the presence of a foreign object in his body. At the motion hearing, Sargent argued that summary judgment was inappropriate because there was insufficient development of the underlying facts due to his being precluded from deposing Springer. He also asserted that Springer had not denied his allegation of fraudulent concealment. The trial court granted summary judgment, finding that Sargent's complaint was time-barred.

On appeal, Sargent argues that summary judgment was inappropriate because he alleged that there was fraudulent concealment, which Springer did not specifically dispute, which therefore created a material issue of fact. Furthermore, he contends that the facts were insufficiently developed in this case because he was deprived of the opportunity to conduct discovery. We find this argument unpersuasive.

Summary judgment is to be granted by a trial court only when it is clear that there are no genuine issues of material fact to be litigated, and the party is entitled to judgment as a matter of law. *Martin v. Arthur*, 339 Ark. 149, 3 S.W.3d 684 (1999). When the running of the statute of limitations is raised as a defense, the defendant has the burden of affirmatively pleading this defense. *Id.* However, once it is clear from the face of the complaint that the action is barred by the applicable limitations period, the burden shifts to the plaintiff to prove by a preponderance of the evidence that the statute of limitations was in fact tolled. *Id.* Fraud suspends the running of the statute of limitations, and the suspension remains in effect until the party having the cause of action discovers

---

1. A cholangiogram is an x-ray study of the biliary duct system. *Mosby's Medical & Nursing Dictionary,* 217 (Laurence Urdang et al. eds., The C.V. Mosby Co.1983).

the fraud or should have discovered it by the exercise of reasonable diligence. *Id.* Although the question of fraudulent concealment is normally a question of fact that is not suited for summary judgment, when the evidence leaves no room for a reasonable difference of opinion, a trial court may resolve fact issues as a matter of law. *Id.* Moreover, in order to toll the statute of limitations, the plaintiff is required to show something more than a continuation of a prior nondisclosure. *Id.* There must be proof of some positive act of fraud, something so furtively planned and secretly executed as to keep the plaintiff's cause of action concealed, or perpetrated in a way that it conceals itself. *Id.*

■ The statute of limitations for medical malpractice actions is found in Arkansas Code Annotated section 16–114–203 (Repl.2006), which provides in relevant part:

> (a) Except as otherwise provided in this section, all actions for medical injury shall be commenced within two (2) years after the cause of action accrues.
>
> (b) The date of the accrual of the cause of action shall be the date of the wrongful act complained of and no other time. However, where the action is based upon the discovery of a foreign object in the body of the injured person which is not discovered and could not reasonably have been discovered within such two-year period, the action may be commenced within one (1) year from the date of discovery or the date the foreign object reasonably should have been discovered, whichever is earlier.

The issue is not whether Springer committed a positive act of fraud with regard to what he stated or neglected to state in his radiology report, but whether his negligence should have "reasonably been discovered." This is a case "based on the discovery of a foreign object in the body,"

which means that pursuant to Arkansas Code Annotated section 16–114–203(b), the negligence attributable to Springer, should have reasonably been discovered when the foreign object was discovered on October 23, 2003. After the actual, physical discovery of the foreign object, Springer's failure to report its presence, even if intentional, should as a matter of law reasonably have been discovered. At that point, Sargent had one year to commence his action against Springer. *Id.* Because this cause of action was not filed within this required one-year period, the trial court did not err in granting summary judgment to Springer.

Affirmed.

BAKER, J., agrees.

BROWN, J., concurs.

WAYMOND M. BROWN, Judge, concurring.

I agree with the majority that this case should be affirmed. However, I write separately because I do not agree with the legal analysis used by the majority in reaching its decision to affirm the lower court.

This is a medical malpractice case against radiologist, Dr. William Springer. Sargent underwent gall bladder surgery on November 13, 2001. The surgery was performed at St. Joseph's Hospital by Dr. Marc Rogers. At the conclusion of the surgery, the nurses assisting Dr. Rogers reported a correct sponge-and-instrument count. Sargent returned to Dr. Rogers two years later complaining of abdominal pain. A subsequent surgery on October 23, 2003, revealed a sponge in Sargent's abdomen that had been placed there during the November 2001 surgery. Sargent brought a medical malpractice suit against Dr. Rogers, Dr. Gary Meek, and the nurs-

es who assisted Dr. Rogers during the surgery. The claims against the nurses were dismissed due to the running of the statute of limitations. The trial court granted Sargent's motion for partial summary judgment against Dr. Rogers on the issue of negligence, and Sargent voluntarily dismissed his claim against Dr. Meek. The case proceeded to trial on the issue of damages, and Sargent was awarded $100,000 in an order filed May 26, 2009. Dr. Rogers appealed to this court, and we recently reversed and remanded the case.[1]

Dr. Springer testified on behalf of Dr. Rogers at his hearing on April 21, 2009. At the hearing, Dr. Springer stated that he performed a T-tube cholangiogram on Sargent on November 28, 2001.[2] He said that x-rays were also taken of Sargent on November 28, 2001, which were stored in the hospital's archives. Dr. Springer stated that his radiology report, issued November 30, 2001, described two large stones in the distal common duct. The report further stated that "no stones or other findings are seen." At the hearing, Dr. Springer was shown a film, which had a light-colored shape toward the top of it. Dr. Springer acknowledged that he could see the light shape; however, he stated that he did not put anything about the shape in his radiology report. He testified that he could not remember if he informed Dr. Rogers about the light-colored shape in 2001.

On cross-examination, Dr. Springer was asked about the films made at the time of Sargent's surgery (operative cholangiogram). He testified that the scout film, which is preliminary to the T-tube cholangiogram, did not show this white or light-colored shape. Dr. Springer stated that at the time of the cholangiogram, he knew that the white shape was there; however, he said that a colleague had recently called the shape to his attention.[3] Dr. Springer said that he was unsure whether he informed Dr. Rogers about the shape in November 2001, but stated that he would "think" the shape was significant enough to tell someone. He also said that it was bothersome to him that the shape was not on the scout film. According to Dr. Springer, when the shape was brought to his attention a week before the hearing, neither he nor his colleague told anyone about their findings. He further testified that he did not know if anyone bothered to tell Sargent about the findings. Dr. Springer stated that when the findings were made, he was just reviewing "a case." When questioned about his failure to mention the shape in his radiology report, he stated:

A radiologist of average skill and learning would not necessarily have put something about that spot in this report. It isn't necessary to put it in there. I don't have any problem with the fact I didn't put it in the report. The main reason being it wasn't on the scout film. This could be any kind of artifact. It could be almost anything. You would think if it were really something it would probably show up on the other one.

On redirect, Dr. Springer stated that the white shape was under vertebra number nine, and that the highest vertebra on the scout film was ten. According to Dr. Springer, vertebra number nine was outside the scope of the scout film, and he would not expect to see the "marker" on the scout film. Dr. Springer said that

---

1. *See Rogers v. Sargent,* 2010 Ark. App. 640, 2010 WL 3783696.

2. A cholangiogram was also performed on Sargent on November 13, 2001.

3. Springer stated that he was subpoenaed the Friday before the hearing.

based on his training, he could look at the white object and conclude that it "could be a lap sponge."

On re-cross examination, Dr. Springer testified that although the white object could be a lap sponge, it also could be "an artifact or a lot of different things." He testified at trial that to a reasonable degree of medical certainty, he could say that the object "is a lap sponge marker as opposed to some artifact." However, he stated that he did not report it in 2001 because he thought that it might be some type of artifact, and because it was not on the scout film. He continued,

> A radiologist of average skill and learning in Hot Springs, Arkansas, should probably have reported this to the doctor. The problem is that since it wasn't visualized on the scout it's hard to conceive that it could be a lap sponge in the surgical field and not be on the scout. So I have some real question whether it could be a lap sponge based on the fact that it's not on the scout film and thus not in the field of operation.

Dr. Springer stated that he worked for Dr. Rogers a lot before Dr. Rogers moved, and that Dr. Rogers ordered him to check Sargent for retained stones in the column duct. Dr. Springer testified that he did not know whether Dr. Rogers reviewed the films, but that a lot of physicians "double check the x-rays themselves to see what they say."

On further redirect, Dr. Springer stated that his radiology report was prepared for the purpose of going into Sargent's medical record. He said that he prepared the report and delivered it to the medical records maintained by Dr. Rogers.

Upon further re-cross examination, Dr. Springer stated that if he thought that the object on the film was a sponge, it would be pretty important; however, it was not in his report. He said that he could not speculate eight years later why he failed to include the white shape in his report. Dr. Springer testified that he normally placed things in his report that he felt were important.

On June 16, 2009, Sargent filed a complaint against Dr. Springer alleging negligence. Dr. Springer filed an answer on June 25, 2009, denying all the material allegations, and asserting the statute of limitations as an affirmative defense. On July 15, 2009, Dr. Springer filed a motion for summary judgment along with a brief in support of that motion. Sargent filed a first amended complaint on July 22, 2009, asserting negligence and fraudulent concealment. According to this complaint, Drs. Springer and Rogers conspired together to hide the fact that a sponge was left in Sargent, and Dr. Springer fraudulently concealed that a sponge was left in Sargent's body. Dr. Springer filed an answer on July 30, 2009, again denying the material allegations contained in Sargent's complaint, and asserting the statute of limitations as a defense. On August 13, 2009, Dr. Springer filed a motion to quash his deposition notice.[4] The trial court granted Dr. Springer's motion to quash in an order filed on August 25, 2009. Sargent filed his response to Dr. Springer's motion for summary judgment on September 14, 2009.[5] He included an affidavit stating that prior to Dr. Springer's testimony, he had no idea that the cholangiogram indicated the presence of a foreign object in his body. Sargent filed a supplemental response on September 15, 2009. Dr. Springer filed a

---

4. The notice was attached to a letter written on August 5, 2009, and sent to Dr. Springer's attorney.

5. Sargent requested, and was granted, an extension of time to file a response to Dr. Springer's motion for summary judgment.

reply to Sargent's response on September 18, 2009. In that reply, Dr. Springer stated that had Sargent's attorney "done basic discovery in the case against Dr. Rogers, as was done by defense counsel, James Stouffer, the Plaintiff would have 'discovered' what he now claims was fraudulently concealed." A hearing on Dr. Springer's motion for summary judgment took place on September 21, 2009. At the hearing, Sargent's attorney asked that Dr. Springer's motion for summary judgment be denied:

> It's our position there's not been any development of facts. I tried to take Dr. Springer's deposition before this, and as Your Honor knows, Mr. Malcom managed to quash that deposition on waiting on this hearing. But we have no development of that particular testimony beyond that point. We did amend and allege fraudulent concealment and we think that at this point there's at least enough suspicious circumstances that we should be allowed to pursue that. If in fact it turns out there's no evidence, fine. But right now, the fact of the matter is we have testimony that for some reason after eight years—number one, I left it out of the original report— and he testified that he may have told Dr. Rogers about it, he doesn't know— doesn't recall. So we think that we should be able to at least develop this to see if there was some collusion not to tell that there was a sponge left in the body. And that's the basis for fraudulent concealment, and we think that there's—based upon his testimony that for some unknown reason, based on some unknown colleague asking him to go to the hospital and review it, that it is

certainly a highly suspicious situation of why he didn't report the sponge in the first place.

Upon further inquiry by the court, Sargent's attorney told the court that summary judgment should also be denied because fraudulent concealment had not been denied by either Dr. Springer or Dr. Rogers.

The trial court granted Dr. Springer's motion for summary judgment at the conclusion of the hearing. The court stated that Sargent's claim against Dr. Springer was time barred, and that there was no fraudulent concealment to toll the statute of limitations. The order was filed on September 23, 2009. Sargent filed a motion for reconsideration on October 15, 2009. The motion was denied by an order filed on October 19, 2009. This appeal followed.

Sargent argues that summary judgment is inappropriate when fraudulent concealment has been pled. Summary judgment may only be granted when there are no genuine issues of material fact to be litigated.[6] The moving party is then entitled to judgment as a matter of law.[7] Once the moving party has established a prima facie entitlement to summary judgment, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact.[8] On appellate review, this court determines if summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of the motion leave a material fact unanswered.[9] This court views the evidence in a light most favorable to the party against whom the motion was filed, resolving all doubts

6. *K.C. Props. of Nw. Ark., Inc. v. Lowell Inv. Partners,* 373 Ark. 14, 280 S.W.3d 1 (2008).

7. *Id.*

8. *Id.*

9. *Id.*

and inferences against the moving party.[10] Our review focuses not only on the pleadings, but also on the affidavits and other documents filed by the parties.[11]

Sargent contends that the statute of limitations was tolled by fraudulent concealment. Fraudulent concealment is not a cause of action; rather, it is a response raised against the defense of statute of limitations.[12] In order to toll the statute of limitations, a plaintiff has to ⌊₁₂show something more than a continuation of a prior nondisclosure.[13] Fraudulent concealment tolls the statute of limitations when the persons alleged to have committed the fraud have committed a positive act of fraud, something so furtively planned and secretly executed as to keep the plaintiff's cause of action concealed, or perpetrated in a way that it conceals itself.[14] Even if fraudulent concealment is found, the appellant must additionally prove that the fraud would not have been detected by the exercise of reasonable diligence.[15] Although the question of fraudulent concealment is normally a question of fact that is not suited for summary judgment, when the evidence leaves no room for a reasonable difference of opinion, a trial court may resolve factual issues as a matter of law.[16]

Here, Sargent failed to meet his burden that Dr. Springer committed a positive act of fraud that was furtively planned and secretly executed. Dr. Springer testified that his radiology reports were placed in the medical records maintained by Dr. Rogers. He also stated that the x-rays taken of Sargent were located in the hospi-

tal's archives. Dr. Springer had recently gone to the hospital and looked at the films at the request of a colleague. Additionally, Sargent filed an affidavit in December 2003, stating that he had requested his medical records from St. Joseph's. Therefore, there was no concealment of radiology reports or the films they were ⌊₁₃based on. The trial court did not err in its conclusion that summary judgment was appropriate in this case because no fraudulent concealment transpired.

---

10. *Id.*

11. *Id.*

12. *See Barre v. Hoffman,* 2009 Ark. 373, 326 S.W.3d 415.

13. *Meadors v. Still,* 344 Ark. 307, 40 S.W.3d 294 (2001).

14. *Barre, supra.*

15. *Id.*

16. *See Davis v. Parham,* 362 Ark. 352, 208 S.W.3d 162 (2005).