Jim PARSONS *v.* STATE of Arkansas

99-1176                                    15 S.W.3d 339

Supreme Court of Arkansas
Opinion delivered April 27, 2000

*David S. Clinger*, Judge;

*Stephen Lee Wood, P.A.*, by: *Stephen Lee Wood*, for appellant.

*Mark Pryor*, Att'y Gen., by: *Dennis R. Hansen*, Ass't Att'y Gen., for appellee.

W.H. "DUB" ARNOLD, Chief Justice. Appellant Jim Parsons appeals the trial court's granting of summary judgment ousting him from his position on the Board of Trustees of Northwest Arkansas Community College. We reverse and remand the case.

Appellant was elected in the 1996 general election to position 3 on the Board of Trustees of Northwest Arkansas Community College (hereinafter referred to as the "Board") for a six-year term. Parsons was elected "at large" by the combined electorate of the College's district, that being the voters of the Bentonville school district and of the Rogers school district. Parsons lived within the Rogers school district at the time of his election.

Act 1258 of 1997, now codified at Ark. Code Ann. § 6-61-530 (Supp. 1999), was enacted subsequent to the 1996 general election. This Act authorized the Board to apportion its positions within the Bentonville and Rogers school districts according to population, "[b]eginning with the 1998 election ... *so long as* all board members are residents and qualified electors of the community college district and the school district...." (Emphasis added.)

On May 26, 1998, the Board approved a motion to apportion six of the nine Board positions to the Rogers school district and three positions to the Bentonville school district. Two of the then current Board members lived in Bentonville; the remaining seven members lived in Rogers. Three of the Rogers positions were up for election in 1998. Parsons voted in favor of the apportionment.

On June 23, 1998, it was reported that the member who occupied position 5 and who lived in Rogers would give up his seat so that it could be filled by someone from the Bentonville district in the upcoming election. On August 25, 1998, the Board approved a motion which apportioned positions 1, 5, and 9 to Bentonville and positions 2, 3, 4, 6, 7, and 8 to Rogers. Parsons, who held position 3, voted against this motion.

Parsons had moved to Bella Vista, which is within the Bentonville school district, on or about August 9, 1998, although the date of the actual change of residency is unclear from the record. At any

rate, Parsons did not inform the Board of his new address prior to August 25, 1998. After Parsons refused to resign from his position on the Board, the State brought an action for declaratory judgment and petition for ouster pursuant to Ark. Code Ann. § 16-118-104 (1987) or for a writ of quo warranto.

After a hearing on the State's motion for summary judgment, the relief requested by the State was granted. The trial court found that Parsons had "disenfranchised" himself by moving his residence from Rogers to Bella Vista (Bentonville district) and was no longer qualified to serve under Ark. Code Ann. § 6-61-530. Rather than interpreting the Act as requiring any apportionment to fit the residency scheme of the presently seated Board members, as the "so long as" language clearly required, the trial court found the Act to be ambiguous, but nevertheless interpreted the Act as requiring Parsons to be a resident of the school district to which his position had been apportioned in the newly created apportionment scheme, even though he was elected to a six-year term *prior* to the effective date of the Act. Parsons had argued that Act 771 of 1999 amended Ark. Code Ann. § 6-61-530 to make the apportionment process inapplicable to members elected prior to the 1998 election. The trial court found that Act 771 of 1999 did not apply to appellant.

For his appeal, appellant contends that the trial court erred in granting summary judgment in favor of the State and seeks reversal as a result; he asserts the following in support of his position:

1) That Act 1258 of 1997 does not apply to a member of the Board of Trustees of Northwest Arkansas Community College who was elected on an "at large" basis in 1996 to a six-year term of office.

2) That Act 771 of 1999 amends Ark. Code Ann. § 6-61-530 to exclude members of the Board of Trustees of Northwest Arkansas Community College who were elected to their positions prior to the 1998 general election from the operation of Act 1258 of 1997.

We agree with appellant that the trial court erred in granting summary judgment in favor of the State and hereby reverse the trial court's ruling.

## I. Standard of Review

■■ This court recently stated its standard of review for orders of summary judgment:

> The law is well settled that summary judgment is to be granted by a trial court only when it is clear that there are no genuine issues of material fact to be litigated, and the party is entitled to judgment as a matter of law. *Wallace v. Broyles*, 331 Ark. 58, 961 S.W.2d 712 (1998), *supp. opinion on denial of reh'g*, 332 Ark. 189 (1998). Once the moving party has established a prima facie entitlement to summary judgment, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact. *Id.* On appellate review, this court determines if summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of the motion leave a material fact unanswered. *Id.* This court views the evidence in a light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. *Id.* Our review focuses not only on the pleadings, but also on the affidavits and other documents filed by the parties. *Id.*

*Shelton v. Fiser*, 340 Ark. 89, 8 S.W.3d 557 (2000).

## II. Propriety of Summary Judgment

■ The trial court found that no genuine dispute as to any material fact existed. Inconsistent with this finding, however, the court noted in Footnote 1 of its order granting summary judgment, that the date of the actual change of appellant's residence was "unclear from the record." We hold that the effective date of appellant's residency change is a *central* issue in this case; as such, if that date is "unclear from the record," then a genuine issue of material fact obviously existed at the time the trial court considered the State's motion for summary judgment.

■ Although appellant did not raise this issue on appeal, we conclude that it must not be overlooked, as the trial court's inconsistent finding amounts to error as a matter of law. Accordingly, we must hold that the trial court's ruling granting said motion was in error and must be reversed. Because we have determined that the trial court's order granting summary judgment must be reversed due

to the existence of an unanswered material fact, it is unnecessary for us to reach the appellant's other points on appeal.

Reversed and remanded.

GLAZE and BROWN, JJ., dissent.

IMBER, J., concurs.

A NNABELLE CLINTON IMBER, Justice, concurring. I concur with the result reached by the majority because the arguments made by both parties in this appeal clearly reflect the existence of a material issue of fact regarding the effective date of appellant's residence change. According to appellant, he was living within the Bentonville school district when the board officially apportioned his position, which "goes to the heart of the trial court's decision." In contrast, the State asserts that appellant resided in the Rogers school district at the time the board apportioned position 5 to the Bentonville school district.

T OM GLAZE, Justice, dissenting. The majority opinion departs from the well-settled and governing standard of review that this court will not reverse the trial court on a point not raised below or argued on appeal. For this reason alone, this case should be affirmed. However, I would affirm the case on its merits.

In November of 1996, Jim Parsons was elected as an at-large member to position three of the nine-person Board of Trustees of the Northwest Arkansas Community College District, comprised of the Rogers and Bentonville School Districts. Parsons, as well as each other member, was elected to a six-year term. At that time, Parsons resided in the Rogers School District.

In March of 1997, the General Assembly enacted Act 1258 which provided the following:

> Beginning with the 1998 election, *if* the *members* of the local board of a community college *are elected at large and* the community college *district is composed of more than one school district,* ... *the board may apportion* a certain number of *positions on the board for each school district* according to the most *recent census information, so long as all board members are residents and qualified electors of the community college district and the school district.*

Because the Northwest Community College District met Act 1258's requirements that (1) its district be comprised of the two school districts and (2) it had members elected at large, Northwest's Board held a meeting on May 26, 1998, and apportioned its nine board member positions between the Rogers and Bentonville School Districts, designating six positions for Rogers and three positions to Bentonville. Parsons' position was one of the six apportioned to Rogers District, where Parsons resided. Incumbent board member Craig Young, position five, held the only position that was apportioned to a school district (Bentonville) where he did not reside; however, on June 23, 1998, Young agreed not to run for reelection to his position at the November 1998 election. To better define which positions were designated to the Rogers and Bentonville Districts, the Board met on August 25, 1998, and clarified that positions 1, 5, and 9 were to be apportioned to Bentonville, and the remaining positions were assigned to Rogers. In sum, based on the information it had, the Board apportioned all positions, so the eight incumbent members (including Parsons) resided in the school district to which they were apportioned. The one incumbent member, who would no longer reside in the school district to which he was apportioned, had agreed to give up his position, thus permitting a person residing in the Bentonville District to fill Young's vacancy. In these circumstances, the Board's May 26 and August 25 meetings apportioning all nine positions met the requirements of Act 1258.

In conferencing this case, the suggestion was advanced that by the August 25 meeting, Parsons had already moved to the Bentonville District and no longer resided in Rogers where the board continued to assign Parsons's position. While Parsons averred that he had executed a contract on August 5, 1998, to buy a house in the Bentonville District and asserted that he had spent his first night on August 9, Parsons also said that the sale was not closed until September 24, and that he did not turn off the utilities to his Rogers home until September 24. He further said that he kept his move to the Bentonville District a secret until he knew the sale would close. In short, Parsons's own statements reflect that he had not moved from his Rogers residence and domicile until September 24. Because Parsons chose not to remove his Rogers voting domicile and residence until September 24, he was well aware that his position had been assigned to Rogers and he knowingly vacated it.

The General Assembly enacted Act 1258 in order to have the seats on the Board apportioned in accordance with the census, and, at the same time, to prevent the disfranchisement of members who were then on the Board. Both of those objectives were met. Act 1258 was unambiguous in its requirements, and the Board's actions complied with those requirements completely. It was Parsons who failed to abide by the Act's dictates, and it is because of his secretive decision to move out of the district to which his seat was apportioned that he should be unable to continue serving in that position. Because Parsons failed to show the trial court erred in holding he disfranchised himself by moving his domicile to Bella Vista, we should affirm.

BROWN, J., joins this dissent.