Karen SHELTON, As Next Friend of
Nathan Piccirilli *v.* William P. FISER, M.D.; Robert L. Watson,
As Executor of the Estate of John Roger Clark;
Arkansas Sports Medicine & Orthopedic Center, P.A.;
Edward R. Weber, M.D.; and
Arkansas Specialty Care Centers, P.A.

99-331                                            8 S.W.3d 557

Supreme Court of Arkansas
Opinion delivered January 20, 2000

*Jack Pasqual* and *Patton, Tidwell & Sandefur, LLP*, by: *Nicholas H. Patton* and *Christie Gunter Adams*, for appellant.

*Laser, Wilson, Bufford & Watts, P.A.*, by: *Ken Cook* and *Donna L. Gay*, for appellee William P. Fiser, M.D.

*Womack, Landis, Phelps, McNeill & McDaniel*, by: *Paul D. McNeill* and *Jeffrey L. Singleton*, for appellee Robert L. Watson.

*Anderson, Murphy & Hopkins, L.L.P.*, by: *Overton S. Anderson* and *David A. Littleton*, for appellees *Edward R. Weber, M.D.* and *Arkansas Specialty Care Centers, P.A.*

R OBERT L. BROWN, Justice. This appeal involves the application of the statute of limitations to a medical malpractice action brought by a parent on behalf of a minor child. Three issues are raised in this appeal by appellant Karen Shelton as the mother of the minor child, Nathan Piccirilli: (1) the general savings statute should apply to toll the two-year statute of limitations for medical malpractice actions; (2) Shelton's own claims for medical expenses are not barred by the two-year statute of limitations but should exist as long as the minor child's cause of action does; and (3) a genuine issue of material fact exists concerning fraudulent concealment by the appellees. We find no merit in any of these claims, and we affirm the order of dismissal and the summary judgment.

The facts leading up to the trial court's two orders are these. On November 5, 1994, Nathan Piccirilli, who was age eleven at the time, fractured his right arm in a go cart accident. He was taken to Saline Memorial Hospital in Benton where he was treated by Dr. Shelby Duncan, an orthopedic specialist. Dr. Duncan recommended that Piccirilli be transferred to Baptist Medical Center in Little Rock, and he was transferred on November 7, 1994. At Baptist, Piccirilli was accepted as a patient by Dr. William P. Fiser, a vascular surgeon, who is an appellee. Dr. Fiser determined that Piccirilli needed surgery and consulted with Dr. John Roger Clark, an orthopedic surgeon, whose probate estate is also an appellee.

On November 7, 1994, Drs. Fiser and Clark operated on Piccirilli. Dr. Fiser operated on the brachial artery in the arm which had been crushed or contused by a bone fragment, and Dr. Clark performed a fasciotomy on the arm and resplintered it. The following day Dr. Clark performed a skin release of the volar/flexor compartment, and on November 10, 1994, he did a dressing change under general anesthesia and attempted to evaluate the viability of the forearm muscles.

On November 12, 1994, Dr. Edward R. Weber, another appellee, was brought in as a hand specialist, and he performed a debridement of dead muscle tissue in the forearm. Two days later he did a second debridement and concluded that there were not enough viable muscles left for tendon transfers to reconstruct the hand. Drs. Fiser and Weber recommended amputation to Piccirilli's family but encouraged them to seek a second opinion. The family had Piccirilli transferred to Arkansas Children's Hospital on November 15, 1994.[1]

On May 23, 1996, Shelton, as next friend of Piccirilli, filed a medical malpractice action against Dr. Duncan, five Jane Does, and St. Paul Fire and Marine Insurance Co., the malpractice carrier for Saline Memorial Hospital. On April 24, 1998, Shelton filed a first amended complaint, adding Drs. Weber, Fiser, and Clark and Arkansas Sports Medicine and Orthopedic Center and Arkansas Specialty Care Centers as parties defendant.[2] The amended complaint asserted claims of medical malpractice, civil conspiracy, and fraudulent concealment against Drs. Fiser and Clark and Arkansas Sports Medicine, and claims of civil conspiracy and fraudulent concealment against Dr. Weber and Arkansas Specialty Care. Following the amended complaint, the added parties defendants, who are the appellees in this appeal, moved to dismiss the complaint based on the two-year statute of limitations for medical malpractice claims.

On May 28, 1998, Shelton added Robert L. Watson, the executor of the Clark Estate, as a party defendant. On September 24, 1998, she added a cause of action against Dr. Fiser for deceit. The appellees then separately moved for summary judgment on the claim of fraudulent concealment.

In its first order, the trial court granted the appellees' separate motions to dismiss the malpractice causes of action because they were barred by the two-year statute of limitations. In that same order, the trial court found that Shelton had sufficiently pled fraudulent concealment and that this claim would not be dismissed. In a subsequent order, the trial court granted summary judgment in

---

[1] The arm apparently was not amputated, as the first amended complaint states that Piccirilli has regained significant motor function but has little strength in his right hand.

[2] Dr. Clark apparently worked for Arkansas Sports Medicine and Orthopedic Center and Dr. Weber worked for Arkansas Specialty Care Centers.

favor of the appellees on the fraudulent concealment claim. Shelton then took a voluntary non-suit against Dr. Duncan and St. Paul, and the trial court entered a final judgment based on its previous orders pursuant to Ark. R. Civ. P. 54(b).

Shelton's first point on appeal concerns which savings statute should apply to a minor child's cause of action for medical malpractice. According to Shelton, the general savings statute for minors (Ark. Code Ann. § 16-56-116(a) (1987)), applies. That section read as follows in 1994:

> (a) If any person entitled to bring any action under any law of this state is, at the time of the accrual of the cause of action, under twenty-one (21) years of age, or insane, or imprisoned beyond the limits of the state, that person may bring the action within three (3) years next after attaining full age, or within three (3) years next after the disability is removed.

Shelton also cites our decision in *Graham v. Sisco*, 248 Ark. 6, 449 S.W.2d 949 (1970), for the proposition that § 16-56-116(a) applies to *any* action under *any* law and, thus, tolls the two-year statute of limitations for minor children under our Medical Malpractice Act. Finally, Shelton emphasizes that the General Assembly in 1999 added a repealer clause to § 16-56-116, which stated that all laws and parts of laws in conflict with this act are repealed. 1999 Ark. Acts 18.[3]

We disagree with Shelton's analysis of the history of the savings statute as it applies to minor children in medical malpractice actions. By Act 709 of 1979, Act 997 of 1991, and Act 735 of 1995, the General Assembly added a savings statute for minors to the Medical Malpractice Act. The savings statute for minors now reads:

> (c)(1) If an individual is nine (9) years of age or younger at the time of the act, omission, or failure complained of, the minor or person claiming on behalf of the minor shall have until the later of the minor's eleventh birthday or two (2) years from the act, omission, or failure in which to commence an action.

> (2) However, if no medical injury is known and could not reasonably have been discovered prior to the minor's eleventh

---

[3] Act 18 of 1999 also deleted the phrase "or imprisoned beyond the limits of the state" in § 16-56-116(a).

birthday, then the minor or his representative shall have until two (2) years after the medical injury is known or reasonably could have been discovered, or until the minor's nineteenth birthday, whichever is earlier, in which to commence an action.

Ark. Code Ann. § 16-114-203(c) (Supp. 1999).[4] Otherwise, all causes of action for medical malpractice must be commenced within two years of the medical injury. Ark. Code Ann. § 16-114-203(a) (Supp. 1995).

■ ■ Act 709 of 1979 was enacted seven years after our decision in *Graham v. Sisco, supra.* Act 997 of 1991 and Act 735 of 1995 were enacted much later. In *Graham,* we specifically noted that the statute of limitations for medical malpractice did not contain a savings statute for minors. That was rectified by Act 709 and then by Act 997 and Act 735, all of which enacted the controlling statute for minor children who have malpractice actions brought on their behalf. It has long been the law in Arkansas that a general statute must yield when there is a specific statute involving the particular subject matter. *See, e.g., Board of Trustees v. Stodola,* 328 Ark. 194, 942 S.W.2d 255 (1997); *Donoho v. Donoho,* 318 Ark. 637, 887 S.W.2d 290 (1994); *Conway Corp. v. Construction Eng'rs, Inc.,* 300 Ark. 225, 782 S.W.2d 36 (1989). That principle governs this issue, and we hold that § 16-114-203(c) provides the applicable statute of limitations for a minor child's medical malpractice action. *See also Adams v. Arthur,* 333 Ark. 53, 969 S.W.2d 598 (1998) (two-year limitations period in Medical Malpractice Act supersedes limitations period in Product Liability Act). In this regard, we adopt the reasoning of the court of appeals in *Smith v. Diversicare Leasing Corp.,* 65 Ark. App. 138, 985 S.W.2d 749 (1999) (specific savings statute under Medical Malpractice Act for incompetents supersedes the general savings statute).

■ Furthermore, we do not consider a repealer clause added to the general savings statute to have the effect of repealing the specific savings statute enacted for minor children in the Medical Malpractice Act. To be sure, a general repealer may repeal conflict-

---

[4] Act 997 of 1991 limited the savings statute for minors to medical injuries occurring from obstetrical care. Act 735 of 1995 expanded the applicability of the savings statute to all medical injuries. The application of Act 735 to a 1994 alleged medical injury was not raised by the parties. The issue raised by Shelton was that a statute dealing with children who are nine or younger cannot govern the cause of action of Piccirilli, who was eleven.

ing laws. *See Winston v. Robinson*, 270 Ark. 996, 606 S.W.2d 757 (1980). However, repeals by implication are not favored in interpreting our statutes. *See Robinson v. Langdon*, 333 Ark. 662, 970 S.W.2d 292 (1998). And, again, repeal does not occur in a situation, such as we have in the instant case, where the specific act establishing a cause of action for medical malpractice contains its own savings statute for minors.

We conclude that Piccirilli does not fall within either of the two exceptions for a minor's cause of action under § 16-114-203(c). Accordingly, the complaint brought on his behalf is barred by the two-year statute of limitations.

Shelton's second point is dependant upon our resolution of her first point. She contends that a parent's cause of action to recover medical expenses incurred on a child's behalf should be subject to the same limitations period as the child's cause of action for negligence. As already discussed, her theory is that Piccirilli's cause of action survived under the general savings statute until age twenty-one. Hence, she reasons that her cause of action should only be restricted by the same limitations period.

Because we have already held that Piccirilli's complaint had to have been brought within two years of the alleged medical injury, this second issue is effectively resolved. The parent under these facts is subject to the same two-year period for recovery of the medical expenses. *See National Bank of Commerce v. Quirk*, 323 Ark. 769, 918 S.W.2d 138 (1996). The trial court did not err in this regard.

For her final point, Shelton claims that genuine issues of material fact exist surrounding her fraudulent concealment claim against the appellees, and summary judgment as a result was not appropriate.

This court recently stated its standard of review for orders of summary judgment:

> The law is well settled that summary judgment is to be granted by a trial court only when it is clear that there are no genuine issues of material fact to be litigated, and the party is entitled to judgment as a matter of law. *Wallace v. Broyles*, 331 Ark. 58, 961 S.W.2d 712 (1998), *supp. opinion on denial of reh'g*, 332 Ark. 189 (1998). Once the moving party has established a prima facie

> entitlement to summary judgment, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact. *Id.* On appellate review, this court determines if summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of the motion leave a material fact unanswered. *Id.* This court views the evidence in a light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. *Id.* Our review focuses not only on the pleadings, but also on the affidavits and other documents filed by the parties. *Id.*

*Adams v. Arthur*, 333 Ark. at 62, 969 S.W.2d at 605.

■ Fraudulent concealment suspends the running of the statute of limitations, and the suspension remains in effect until the party having the cause of action discovers the fraud or should have discovered it by the exercise of due diligence. *See Martin v. Arthur*, 339 Ark. 149, 3 S.W.3d 684 (1999); *First Pyramid Life Ins. Co. v. Stoltz*, 311 Ark. 313, 843 S.W.2d 842 (1992), *cert. denied* 510 U.S. 908 (1993). This court also noted that "[a]lthough the question of fraudulent concealment is normally a question of fact that is not suited for summary judgment, when the evidence leaves no room for a reasonable difference of opinion, a trial court may resolve fact issues as a matter of law." *Martin*, 339 Ark. at 154, 3 S.W.2d at 687.

■ This court has recently addressed what constitutes fraudulent concealment:

> In order to toll the statute of limitations, we said that plaintiffs were required to show something more than a continuation of a prior nondisclosure. We said that there must be evidence creating a fact question related to "some positive act of fraud, something so furtively planned and secretly executed as to keep the plaintiff's cause of action concealed, or perpetrated in a way that it conceals itself."

*Martin*, 339 Ark. at 154, 155, 3 S.W.2d at 687 (*quoting Adams v. Arthur*, 333 Ark. at 68, 969 S.W.2d at 605 and *Norris v. Bakker*, 320 Ark. 629, 633, 899 S.W.2d 70, 72 (1995)). Accordingly, it is clear from our caselaw that not only must there be fraud, but the fraud must be furtively planned and secretly executed so as to keep the fraud concealed.

In the instant case, Shelton contends that the factual issue for her allegation of fraudulent concealment is created by the deposi-

tion testimony of Dr. Duncan's expert witness, Dr. Thomas P. Rooney. Piccirilli's medical records state that Dr. Clark performed a fasciotomy of the volar compartment of Piccirilli's right forearm on November 7, 1994. Dr. Rooney testified in his deposition that Dr. Clark's care and treatment fell below the standard of care because Dr. Clark performed only a partial fasciotomy. A second expert for Dr. Duncan, Dr. Reese Louis Crow, confirmed that opinion in his deposition. Dr. Rooney concluded that the incomplete nature of the fasciotomy caused or contributed to the damage to the forearm. Dr. Rooney also stated that he read a letter written by Dr. Fiser to Shelton's attorney and that some of the statements made by Dr. Fiser in quoting Dr. Weber have turned out not to be factually true. In particular, Dr. Rooney questioned Dr. Fiser's statement that there were no viable muscles in the flexor compartment. He pointed out that Piccirilli was later found to have some viable muscles. Additionally, Dr. Rooney referred to Dr. Fiser's statement that the extensor compartment muscles were not viable. Dr. Rooney emphasized, however, that later some of those muscles were used for tendon transfers.

Shelton further alleges that Drs. Fiser, Clark and Weber discussed among themselves the potential causes of Piccirilli's injuries, and that following these discussions, Dr. Fiser dictated discharge summaries indicating that the cause of the muscle death in the forearm was an unrecognized injury to the brachial artery. Six months later, Dr. Fiser stated in a letter to Piccirilli's attorney that the care and treatment provided by Drs. Fiser, Clark and Weber were not causes of the muscle death in Piccirilli's forearm. This inconsistency between the discharge summaries and Dr. Fiser's subsequent statements establishes fraud, under Shelton's theory of the case.

We do not agree that Shelton has raised a genuine issue of material fact regarding fraudulent concealment. First, Dr. Rooney's and Dr. Crow's conclusions go to the proper standard of care and, therefore, to negligence rather than to fraud. In addition, the asserted inconsistency between the discharge summaries and Dr. Fiser's later statement to counsel were not proved to have been concealed in any form or fashion. We need not reach the issue of whether the inconsistency amounted to fraud because our law is clear that in order to toll the statute of limitations, the fraud perpetrated must be concealed. Concealed fraud means fraud which is

furtively planned and secretly executed. *See Martin v. Arthur, supra.* Here, the medical records pertaining to Piccirilli's treatment and care at Baptist were not concealed but turned over to his first medical expert, Dr. Leland Hall, in 1995. And Drs. Weber and Fiser filed affidavits in support of their motions for summary judgment averring that their findings and opinions were not hidden but disclosed. Shelton failed to offer countervailing proof of concealment and, thus, failed to establish an essential element of the tort.

Affirmed.

GLAZE, IMBER, and SMITH, JJ., not participating.

SPECIAL JUSTICE DAVID KEITH RUTLEDGE and SPECIAL JUSTICE JAMES PENDER join in this opinion.