Lesta MEADORS v. Eugene F. STILL, M.D.

00-619 40 S.W.3d 294

Supreme Court of Arkansas
Opinion delivered March 29, 2001

*Law Offices of Charles Karr, P.A.*, by: *Charles Karr* and *Shane Roughley*, for appellant.

*Warner Smith & Harris, PLC*, by: *Wayne Harris*, for appellee.

ROBERT L. BROWN, Justice. This appeal brought by appellant Lesta Meadors is from an order granting summary judgment in favor of appellee Dr. Eugene F. Still. On appeal, Meadors questions the standard of review utilized by the trial court in granting summary judgment and urges that the trial court erred in determining that her cause of action was not fraudulently concealed by Still's actions. We disagree that reversal is warranted, and we affirm the trial court.

Lesta Meadors was a forty-one-year-old woman at the time she filed her first complaint in this matter in 1999. She had been born with Poland's Syndrome, which caused a cavity in the right side of her chest. At about age thirteen, she had her first breast augmentation, with an implant of 225 cc. in the right breast area. On March

15, 1984, she had a second breast augmentation. Dr. Still performed that surgery and inserted a 475 cc. implant in the right breast area and a 180 cc. implant in the left breast area. The operating room record at Sparks Regional Medical Center in Fort Smith for March 15, 1984, showed labels which read that Ms. Meadors received a round 175 cc. implant filled to 180 cc. for her left breast and that she received a round 475 cc. implant for her right breast. However, Dr. Still's operative report which was prepared following that procedure reflected that "[f]inal reconstruction was accomplished with a round 175 cc implant, filled to 180, on the left[,]" and "[a] double lumen reconstructive implant was accomplished on the right, filled to 175 cc." On April 18, 1984, Dr. Still wrote a letter to Ms. Meadors's family doctor, Dr. Bill Dudding, and advised him that he had taken out a 225 cc. gel-filled implant on the right side and replaced it with a 475 cc. reconstructive implant.

In 1997, Ms. Meadors lived in Florida and had her third and final augmentation performed by Dr. Robert Brueck. Prior to the surgery, Dr. Brueck requested her medical records, and she provided him with Dr. Still's operative report from her 1984 surgery. On September 17, 1997, Dr. Brueck removed Ms. Meadors's right implant and replaced it with a 500 cc. implant. Dr. Brueck testified in his affidavit that the implant removed on her right side was larger than he had anticipated, as he had read and relied upon Dr. Still's operative report, which specified a 175 cc. implant on the right side. Because he had contemplated removing a smaller implant than actually existed, Dr. Brueck stated in his affidavit that he did not have a large enough implant on hand to achieve the symmetry between Ms. Meadors's right and left breasts that she desired. The largest size implant he had available was 500 cc. He concluded in his affidavit that Dr. Still made a mistake in dictating his operative report.

On April 26, 1999, Ms. Meadors sued Dr. Still. In her complaint, she alleged that her left breast is now larger than her right and that she is faced with the alternative of having additional surgery or living with the asymmetrical results of her last implants. She further alleged that Dr. Still "affirmatively misrepresented to [her] and Dr. Brueck in his Operative Report the correct size of the right breast implant actually used." According to Ms. Meadors, Dr. Still's "affirmative misrepresentation as to the size of the implant actually used constitutes fraudulent concealment which tolls the statute of limitations." She prayed for compensatory damages.

After Ms. Meadors amended her complaint on two occasions, Dr. Still filed a motion for summary judgment on November 8, 1999. On January 12, 2000, a hearing was held on the motion which consisted of arguments of counsel. On February 4, 2000, the trial court entered its order granting summary judgment in favor of Dr. Still and stated:

> Although the question of fraudulent concealment is normally a question of fact, and is not suited for summary judgment, when the evidence leaves no room for a reasonable difference of opinion, a trial court may resolve fact issues as a matter of law. Smothers v. Clouette, 326 Ark. 1017, 934 S.W.2d 923 (1996). JOHNSON v. ARTHUR, 65 Ark. App. 220 (1999)[.] Plaintiff's claim that the statute of limitations was tolled by fraudulent concealment on the part of the Defendants is without sufficient factual support in the record before the Court and is rejected, and there is no evidence showing that any fraudulent concealment occurred.

Ms. Meadors, in her appeal, first questions the standard of review employed by the trial court in granting summary judgment. She specifically takes issue with the trial court's statement in its order that a trial court may resolve fact issues as a matter of law "when the evidence leaves no room for a reasonable difference of opinion." She contends that this court specifically rejected the "reasonable mind" approach to evaluating the merits of a motion for summary judgment in *Wallace v. Broyles*, 332 Ark. 189, 961 S.W.2d 712 (1998). The trial court erred, according to her theory, when it relied on authority which set out the standard of review for summary judgment as whether reasonable minds could differ.

■ Ms. Meadors, in our judgment, has confused the standard of review for granting summary judgment on the one hand and granting summary judgment based on a statute-of-limitations defense involving fraud or fraudulent concealment on the other. If the pleadings, depositions, answers to interrogatories, admissions, and affidavits show that there is no genuine issue as to any material fact, summary judgment in favor of the moving party shall be entered forthwith, according to our Rules of Civil Procedure. *See* Ark. R. Civ. P. 56(c). Our caselaw is absolutely clear on this. *See, e.g., Crockett v. Essex*, 341 Ark. 558, 19 S.W.3d 585 (2000); *Milam v. Bank of Cabot*, 327 Ark. 256, 937 S.W.2d 653 (1997); *Renfro v. Adkins*, 323 Ark. 288, 914 S.W.2d 306 (1996).

█ Our standard of review when considering whether the statute of limitations has been tolled due to fraudulent concealment is altogether different:

> When the running of the statute of limitations is raised as a defense, the defendant has the burden of affirmatively pleading this defense. *First Pyramid Life Ins. Co. v. Stoltz*, 311 Ark. 313, 843 S.W.2d 842 (1992), *cert. denied*, 510 U.S. 908 (1993). However, once it is clear from the face of the complaint that the action is barred by the applicable limitations period, the burden shifts to the plaintiff to prove by a preponderance of the evidence that the statute of limitations was in fact tolled. *Id.* Fraud suspends the running of the statute of limitations, and the suspension remains in effect until the party having the cause of action discovers the fraud or should have discovered it by the exercise of reasonable diligence. *First Pyramid, supra.* Although the question of fraudulent concealment is normally a question of fact that is not suited for summary judgment, when the evidence leaves no room for a reasonable difference of opinion, a trial court may resolve fact issues as a matter of law. *Alexander v. Flake*, 322 Ark. 239, 910 S.W.2d 190 (1995).

*Adams v. Arthur*, 333 Ark. 53, 63, 969 S.W.2d 598, 602-03 (1998).

█ The trial court followed our clear precedent in the standard it employed to decide whether summary judgment was appropriate based on limitations or whether the statute was tolled due to fraudulent concealment. There was no error in this regard.

Ms. Meadors next contends that in 1984 the size of her right breast implant was fraudulently concealed by Dr. Still. The statute of limitations for medical malpractice ordinarily is two years after the cause of action accrues. *See* Ark. Code Ann. § 16-114-203(a) (Supp. 1999). The date of the accrual of the cause of action is the date of the wrongful act complained of and no other time. Ark. Code Ann. § 16-114-203(b) (Supp. 1999). Here, however, Ms. Meadors claims that the statute of limitations was tolled by Dr. Still's fraudulent concealment.

The crux of Ms. Meadors's argument is that in 1997, Dr. Brueck read Dr. Still's operative report from the 1984 surgery to say that the final volume of the right breast implant was 175 cc. This misstatement in the operative report was relied on by Dr. Brueck, as a prelude to his surgery. The wrong information about the breast implant is comparable to a foreign-object case, according to Ms.

Meadors, where a doctor leaves a foreign object in the patient's body following surgery. She cites this court specifically to *Howard v. Northwest Arkansas Surgical Clinic, P.A.*, 324 Ark. 375, 921 S.W.2d 596 (1996) (barbed tip of a needle left in patient's breast after tissue excised for biopsy); and *Burton v. Tribble*, 189 Ark. 58, 70 S.W.2d 503 (1934) (physician negligently left a roll of gauze in patient's stomach after performing surgery). In *Howard*, we made these pronouncements in concluding that the statute of limitations was tolled: "The alleged act of concealment is part and parcel of the wrongful act complained of. Until the concealment ends, the wrongful act continues." 324 Ark. at 383, 921 S.W.2d at 600. Also, in *Howard*, there was evidence that the physician involved had been informed that the foreign object remained in his patient and took no action. Moreover, the patient had no way of detecting the fraud. We held, as a result, that the limitations period was tolled even though the medical malpractice statute of limitations, § 16-114-203(b), provided that "[t]he date of the accrual of the cause of action shall be the date of the wrongful act complained of and no other time."

Using these foreign-object cases as her legal authority, Ms. Meadors posits that Dr. Still should have known what he wrote in his operative report and that he had a duty to inform her if he made a mistake. She further asserts that there was some evidence that Dr. Still knew he had made an error. For example, she points to his letter dated April 18, 1984, to Dr. Dudding correctly referencing the 475 cc. implant in the right breast and a handwritten notation by Elaine Roberts, a registered nurse, dated April 8, 1992, which states that Dr. Still's operative report says the implant on the right side was filled to 175 cc.

She concludes by advancing the argument that fraudulent concealment, in its broadest sense, embraces unintentional deception and that such an interpretation is a logical extension of *Howard v. Northwest Arkansas Surgical Clinic, P.A., supra.* She cites a Third Circuit Court of Appeals case, *Swietlowich v. County of Bucks*, 610 F.2d 1157 (3d Cir. 1979), for this proposition.

The principles governing appellate review of summary judgment cases have been often stated by this court:

> The law is well settled that summary judgment is to be granted by a trial court only when it is clear that there are no genuine issues of material fact to be litigated, and the party is entitled to judgment as a matter of law. *Wallace v. Broyles*, 331 Ark. 58, 961 S.W.2d 712

(1998), *supp. opinion on denial of reh'g,* 332 Ark. 189 (1998). Once the moving party has established a prima facie entitlement to summary judgment, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact. *Id.* On appellate review, this court determines if summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of the motion leave a material fact unanswered. *Id.* This court views the evidence in a light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. *Id.* Our review focuses not only on the pleadings, but also on the affidavits and other documents filed by the parties. *Id.*

*Shelton v. Fiser,* 340 Ark. 89, 95-96, 8 S.W.3d 557, 561 (2000) (quoting *Adams v. Arthur,* 333 Ark. 53, 62, 969 S.W.2d 598, 605 (1998)).

Although Ms. Meadors insists that this case is comparable to the foreign-object cases discussed above, her reliance on those cases is misplaced. First, the instant case is not one dealing with a foreign object. The operable statutory language dealing with the extension of the statute of limitations due to foreign objects left in the body reads as follows:

> However, where the action is based upon the discovery of a foreign object in the body of the injured person which is not discovered and could not reasonably have been discovered within such two-year period, the action may be commenced within one (1) year from the date of discovery or the date the foreign object reasonably should have been discovered, whichever is earlier.

Ark. Code Ann. § 16-114-203(b) (Supp. 1999). Dr. Still clearly left no unknown foreign object in the body of Ms. Meadors.

Second, the act allegedly perpetrated was not done in such a way that it concealed itself; on the contrary, Dr. Still's operative report was part of Ms. Meadors's medical record. It was readily available and was disclosed to third parties, including Ms. Meadors and Dr. Brueck. Third, while we do have a professional defendant in the form of Dr. Still, there is no evidence that he actually knew of the inconsistency among the reports. Furthermore, the letter written to the family physician, Dr. Dudding, with the correct amounts for each implant does not indicate that Dr. Still believed that a mistake had been made. No proof was presented that even suggests Dr. Still penned the letter to Dr. Dudding in an attempt to

correct his operative report. Fourth, there is no evidence that Dr. Still was ever informed of the inconsistency within the various reports. And, finally, contrary to the foreign-object cases, here we have a plaintiff in Ms. Meadors who could easily have detected any inconsistency in the reports by merely requesting her medical records in their entirety.

 This case most readily approximates the situation in *Shelton v. Fiser, supra.* That case involved an eleven-year-old boy, Nathan Piccirilli, and his treatment by several physicians for injuries he sustained to his right arm in a go-cart accident. Karen Shelton, his mother, filed the suit as next friend of Piccirilli, and raised fraudulent concealment as one of her claims against the treating physicians. The trial court granted summary judgment in favor of the physicians on the fraudulent concealment claim, and this court affirmed. We first discussed the standard of review for orders of summary judgment, and then went on to address fraudulent concealment:

> Fraudulent concealment suspends the running of the statute of limitations, and the suspension remains in effect until the party having the cause of action discovers the fraud or should have discovered it by the exercise of due diligence. *See Martin v. Arthur,* 339 Ark. 149, 3 S.W.3d 684 (1999); *First Pyramid Life Ins. Co. v. Stoltz,* 311 Ark. 313, 843 S.W.2d 842 (1992), *cert. denied* 510 U.S. 908 (1993). This court also noted that "[a]lthough the question of fraudulent concealment is normally a question of fact that is not suited for summary judgment, when the evidence leaves no room for a reasonable difference of opinion, a trial court may resolve fact issues as a matter of law." *Martin,* 339 Ark. at 154, 3 S.W.3d at 687.

This court has recently addressed what constitutes fraudulent concealment:

> In order to toll the statute of limitations, we said that plaintiffs were required to show something more than a continuation of a prior nondisclosure. We said that there must be evidence creating a fact question related to "some positive act of fraud, something so furtively planned and secretly executed as to keep the plaintiff's cause of action concealed, or perpetrated in a way that it conceals itself."

*Martin,* 339 Ark. at 154, 155, 3 S.W.3d at 687 (quoting *Adams v. Arthur,* 333 Ark. at 68, 969 S.W.2d at 605 and *Norris v. Bakker,* 320 Ark. 629, 633, 899 S.W.2d 70, 72 (1995)). Accordingly, it is clear

from our caselaw that not only must there be fraud, but the fraud must be furtively planned and secretly executed so as to keep the fraud concealed.

*Shelton*, 340 Ark. at 96, 8 S.W.3d at 561-62.

██ Based on the reasoning in *Shelton*, it was incumbent on Ms. Meadors to demonstrate something more than a continuation of a prior nondisclosure. Rather, there had to be some proof offered which created a fact question related to a "positive act of fraud." No proof of fraud was offered, much less fraud that was "furtively planned and secretly executed." Instead, at the January 12, 2000 hearing on Dr. Still's motion for summary judgment, Ms. Meadors merely argued that Dr. Still was negligent in drafting the operative report and that because of the way it was drafted, it was fraudulently concealed from her. She further argued that because of the way the operative report was written, the act concealed itself. And, again, she asserted that by writing the letter to Dr. Dudding, this indicated that Dr. Still knew a mistake had been made.

██ We are unwilling to make the leaps in logic that Ms. Meadors proposes. There was no proof of fraudulent concealment. In fact, the proof was just the opposite. As in the *Shelton* case, Dr. Still divulged the correct information regarding the right breast implant to another physician. Moreover, we are unwilling to extend the doctrine of fraudulent concealment to include negligent acts with unintended consequences. Ms. Meadors presents no proof to persuade us otherwise but only argues theories. The trial court did not err in its conclusion that summary judgment was appropriate because no fraudulent concealment transpired.

Affirmed.