Kelly SMITH, as Administratrix of Lydia Shepard *v.*
ST. PAUL FIRE & MARINE INSURANCE COMPANY

CA 01-488 64 S.W.3d 764

Court of Appeals of Arkansas
Division III
Opinion delivered December 19, 2001

*Taylor, Halliburton, Ledbetter & Caldwell,* by: *Mark Ledbetter,* for appellant.

*Barrett & Deacon, P.A.,* by: *Paul D. Waddell* and *D.P. Marshall, Jr.,* for appellee.

SAM BIRD, Judge. During November 4-8, 1996, Lydia Shepherd received medical care from St. Bernard's Regional Medical Center. She died on November 8, 1996. On November 4, 1998, her daughter, Kelly Smith, and other heirs brought a wrongful-death and a survival claim against St. Paul Fire and Marine Insurance Co., the insurance provider for St. Bernard's. The heirs nonsuited these claims on February 19, 1999. The case at bar, alleging the same claims, was filed by appellant Kelly Smith, as purported administratrix of Lydia's estate, on February 18, 2000. However, she was not appointed administratrix until April 3, 2000, by a *nunc pro tunc* order stating that it was effective retroactive to September 14, 1999. St. Paul moved to dismiss, stating that the survival and wrongful-death claims were barred by the statute of limitations. Smith contended that the fraudulent concealment exception was applicable because the alleged acts of malpractice were not discovered until September 1998 and that the hospital had concealed its acts. The trial court granted the motion to dismiss,

which it treated as a summary judgment motion, finding no genuine issue of material fact as to whether the acts had been concealed.

Smith appeals, contending (1) that the trial court improperly granted summary judgment on the ground of statute of limitations because the defendant was in no way prejudiced by the alleged failure of plaintiff to file the action in· the proper capacity and (2) that the trial court improperly granted summary judgment because a genuine issue of material fact remained to be litigated by and between the parties as to the hospital defendant's concealment of the cause of action. We affirm.

*Standard of Review*

■ ■ Summary judgment is a remedy that should only be granted when there are no genuine issues of material fact to litigate and when the case can be decided as a matter of law. *Norris v. Bakker*, 320 Ark. 629, 899 S.W.2d 70 (1995). We have ceased referring to summary judgment as a drastic remedy. *Flentje v. First Nat'l Bank of Wynne*, 340 Ark. 563, 11 S.W.3d 531 ( 2000). We now regard it simply as one of the tools in a trial court's efficiency arsenal; however, we only approve the granting of the motion when the state of the evidence, as portrayed by the pleadings, affidavits, discovery responses, and admissions on file, is such that the non-moving party is not entitled to a day in court, *i.e.*, when there is not any genuine remaining issue of fact and the moving party is entitled to judgment as a matter of law. *Id.*

■ The burden of showing there is no remaining genuine issue of material fact and entitlement to judgment as a matter of law is upon the movant for summary judgment. *Norris, supra.* Any doubt and all inferences must be resolved against the moving party. *Id.* Once the moving party makes a *prima facie* showing of entitlement, however, the responding party must meet proof with proof in order to demonstrate that a genuine issue of material fact remains. *Id.* The response and supporting material must set forth specific facts showing there is a genuine issue for trial. *Id.*

■ ■ When the running of the statute of limitations is raised as a defense, the defendant has the burden of affirmatively pleading this defense. *Meadors v. Still*, 344 Ark. 307, 40 S.W.3d 294 (2001). However, once it is clear from the face of the complaint that the action is barred by the applicable limitations period, the burden shifts to the plaintiff to prove by a preponderance of the evidence

that the statute of limitations was in fact tolled. *Id.* Although the question of fraudulent concealment is normally a question of fact that is not suited for summary judgment, when the evidence leaves no room for a reasonable difference of opinion, a trial court may resolve fact issues as a matter of law. *Id.*

## Statute of Limitations

The cause of action for the wrongful-death and survival claims accrued on November 8, 1996, the date of Lydia Shepherd's death. The first wrongful-death claim was brought by Lydia Shepherd's heirs within the time allowed by the two-year statute of limitations; the heirs nonsuited this claim on February 19, 1999. Under Ark. Code Ann. § 16-56-126, a plaintiff has one year to refile suit regardless of whether the statute of limitations would otherwise prevent such institution of suit. The second suit was filed February 18, 2000, which was within this one-year grace period. However, this second suit was filed by Smith in her purported capacity as administratrix of Lydia Shepherd's estate.

In *Murrell v. Springdale Mem. Hosp.*, 330 Ark. 121, 952 S.W.2d 153 (1997), our supreme court held that the savings statute, Ark. Code Ann. § 16-56-126, could not save wrongful-death and survival claims when the current parties had not been parties to the first suit that had been nonsuited. The court emphasized that the statute provided that if " '*the plaintiff therein* suffers a nonsuit' then '*the plaintiff* may commence a new action within one (1) year.' " *Murrell, supra* at 125, 952 S.W.2d at 156 (emphasis in original). The court barred the wrongful-death claims of Murrell's children because the children were not parties to the first action that had been nonsuited.

In the case at bar, the plaintiffs to the first suit were the heirs of Lydia Shepherd. The plaintiff to the second suit was the purported administratrix of the estate. The heirs had one year from the nonsuiting of the original complaint on February 19, 1999, to refile their wrongful-death claim, but they failed to do so. The savings statute, however, would only extend the time to file for the additional year to the heirs, not to the administratrix. The heirs did not refile the wrongful-death claim prior to expiration of the savings period; thus, it is now time-barred.

Turning to the survival claim, we conclude that this cause of action had lapsed as well. The first survival claim was brought by

Smith and other heirs. Heirs cannot file a survival action; it must be brought by the estate. *See Daughhetee v. Shipley*, 282 Ark. 596, 699 S.W.2d 886 (1984). The estate's survival claim expired, at the latest, on November 9, 1998, and no suit had been filed by the estate prior to that time.

■ The trial judge entered a *nunc pro tunc* order, filed April 3, 2000, that appointed Smith as administratrix and provided that it was retroactive to September 14, 1999. Smith contends that this order made her a valid administratrix as of that retroactive date. Assuming *arguendo* that Smith was a valid administratrix as of September 14, 1999, the survival claim is yet time-barred. The heirs nonsuited the original complaint on February 19, 1999, which was prior to the effective date of the *nunc pro tunc* order. Since there was no administratrix in existence, retroactive or otherwise, when the first complaint was nonsuited, there was no opportunity for the complaint to be amended to include the administratrix as a party. Smith, as administratrix, did not bring suit on behalf of the estate until February 18, 2000, well past the time allowed by the statute of limitations. The current suit was brought within the time allowed by the one-year savings period from the nonsuiting on February 19, 1999. However, the savings statute is inapplicable because the plaintiffs differed between the first and second suits. *See Murrell, supra.*

Smith relies upon *Davenport v. Lee,* 73 Ark. App. 247, 40 S.W.3d 346 (2001), *pet. granted* (May 31, 2001) (No. 01-456), for her argument that because the defendants did not show prejudice, then the trial court's dismissal based on statute of limitations was erroneous. In *Davenport, supra*, Ron and Ramona Davenport had been appointed as administrators of the estate of Ramona's sister. The Davenports brought a *pro se* suit as administrators of the estate or, alternatively, individually and as heirs at law. The trial court dismissed the suit, stating that the Davenports could not file suit in their capacity as personal representatives of the estate because neither of them was an attorney. *Id.* The trial court additionally found that neither was acting in their individual capacity. *Id.* We agreed that the Davenports were not authorized to proceed *pro se* on behalf of the estate, but held that the subsequent amended complaint, which advised the opposing party of the identity of the Davenports' counsel, related back to the initial complaint; thus, the suit was timely brought because the initial complaint tolled the running of the statute of limitations. We found that the opposing party could show no prejudice because the original complaint was timely served and was amended to reflect the identity of counsel.

The defect in the *Davenport* complaint was its failure to show that the plaintiffs were represented by counsel. This defect was cured by the plaintiffs' subsequent amendment. In the case at bar, the defects were that the first suit was brought by the heirs, the wrong party for the survival action, and that the second suit was brought by the administratrix, a different party than the heirs in the first suit. No amendment was ever filed to cure this defect in parties.

Statutes of limitation are for a defendant's protection and a defendant is entitled to believe that he will not be sued after a certain date, barring an exception to the statute of limitations, such as fraudulent concealment. In the case at bar, the defendants were never sued by the administratrix of Shepherd's estate prior to the statute of limitations running on the survival claim. As to the wrongful-death claim, the suit was properly brought by the heirs; however, the heirs nonsuited their original complaint and simply did not refile the suit within the time allowed by the savings statute.

### Fraudulent concealment

Smith next contends that the hospital fraudulently concealed their wrongful acts that allegedly led to the death of Lydia Shepherd and that, accordingly, the statute of limitations was tolled until the discovery of such acts in 1999.

Smith does not abstract any of the medical records which she contends form the basis for her fraudulent concealment allegation. She merely abstracts affidavits which discuss the medical records. Furthermore, we note that Smith's brief violates Ark. Sup. Ct. R. 4-2(1)(6), which states that "the appellant's abstract . . . should consist of an impartial condensation, without comment or emphasis, of only such material parts of the pleadings, proceedings, facts, documents, and other matters in the record as are necessary to an understanding of all questions presented. . . ." Smith, while not abstracting the medical records upon which she relies, discusses the medical records by way of editorial comment in her supporting affidavits.

When an abstract is flagrantly deficient, we *may* affirm for noncompliance with the abstracting requirements. Ark. Sup. Ct. R. 4-2(b)(3). When an abstract is so deficient that we cannot discern what happened in the trial court, we must affirm. *Johnson v. State*, 342 Ark. 357, 28 S.W.3d 286 (2000). However, as long as we can determine from a reading of the briefs and appendices material

parts necessary for an understanding of the questions at issue, we will render a decision on the merits. *Id*; *Carmical v. City of Beebe*, 316 Ark. 208, 871 S.W.2d 386 (1994). Because we can determine from the reading of the briefs material parts necessary for an understanding of the question of fraudulent concealment, we address the merit of Smith's argument, despite her deficient abstract.

 Fraudulent concealment suspends the running of the statute of limitations, and the suspension remains in effect until the party having the cause of action discovers the fraud or should have discovered it by the exercise of reasonable diligence. *Meadors, supra.* Although the question of fraudulent concealment is normally a question of fact that is not suited for summary judgment, when the evidence leaves no room for a reasonable difference of opinion, a trial court may resolve fact issues as a matter of law. *Id.*

 No mere ignorance on the part of the plaintiff of his rights, nor the mere silence of one who is under no obligation to speak, will prevent the statute bar. *Norris, supra.* In order to toll the statute of limitations, a plaintiff is required to show something more than a continuation of a prior nondisclosure. *Meadors, supra.* There must be some positive act of fraud, something so furtively planned and secretly executed as to keep the plaintiff's cause of action concealed, or perpetrated in a way that it conceals itself. *Norris, supra.* And if the plaintiff, by reasonable diligence, might have detected the fraud, he is presumed to have had reasonable knowledge of it. *Id.*

Smith essentially argues that the nurses' making of the charts was an act that was fraudulent in and of itself because of the allegedly untruthful entries. Smith argues, and supports with affidavits, that she only learned in November 1998, that the nurses' entries were allegedly not truthful. She argues that *Gibson v. Herring*, 63 Ark. App. 155, 975 S.W.2d 860 (1998) is analogous. In *Gibson*, a jeweler replaced a diamond with a cubic zirconium. The court held that a fact issue remained as to fraudulent concealment because:

> [a]n act such as that alleged to have been committed by appellee is so furtive by nature that it tends to exclude suspicion or prevent inquiry. A cubic zirconium is designed to look like and be mistaken for a true diamond. The only way appellant could have discovered the fraud immediately upon retrieving the ring would be to have hired an expert to examine the stone. One in appellant's position should not be required to go to such lengths.

*Id.* at 159, 975 S.W.2d at 863.

*Gibson* is distinguishable from the case at bar. Here, Smith was not limited to the sole method of hiring an expert as a means to discover the alleged fraud. The medical records show inconsistencies which were apparent from simply reading the records. The records were obtained by Smith prior to the filing of the first suit in November 1998 and Smith makes no allegation that she was prevented from obtaining the records earlier. The records reflect that Lydia's doctor ordered her transferred to ICU at 9:00 and that she was not yet transferred at 11:00, the time that she went into cardiac arrest. Smith asserts that the nurses falsely represented to her that they were monitoring Lydia at "all times" and that she would be checked on "every few minutes," but the nurses' chart reflects that this was not the case. A similar argument was made in *Meadors, supra.* Meadors argued that when a doctor had recorded erroneous information on an operative report, he fraudulently concealed the wrongful act of implanting an erroneous breast size and that such fraudulent concealment occurred because of the way the operative report was written. The court, in affirming the summary judgment for the doctor, found significant that "here we have a plaintiff . . . who could easily have detected any inconsistency in the reports by merely requesting her medical records in their entirety." *Meadors, supra* at 315, 40 S.W.3d at 300.

 Furthermore, all but one of the hospital's alleged acts that Smith contends fraudulently concealed her cause of action pertain instead to the issue of whether the hospital was negligent. In *Shelton v. Fiser*, 340 Ark. 89, 8 S.W.3d 557 (2000), the court refused to find that allegations pertaining to the standard of care established fraud for purposes of fraudulent concealment. The issues of whether Lydia was timely transferred to ICU and whether she was monitored as closely as she should have been address whether the hospital breached its standard of care, *i.e.*, negligence, not fraud. Smith has alleged no act by the hospital that pertains to the requisite concealment of fraud. Whether the nurses falsely represented to her that Lydia would be monitored more closely than she was is the only allegation of a fraudulent act made by Smith.

 The *Shelton* court refused to reach the issue of whether inconsistencies between medical reports and later statements amounted to fraud because "our law is clear that in order to toll the statute of limitations, the fraud perpetrated must be concealed." We as well do not reach the issue of whether the inconsistencies between the nurses' representations and the reports amounted to

fraud because the inconsistencies were not concealed; there was no positive act of fraud, an act so furtively planned and secretly executed as to keep the plaintiff's cause of action concealed, or an act that was perpetrated in such a way that it concealed itself. Accordingly, we hold that the trial court properly granted summary judgment.

Affirmed.

CRABTREE and BAKER, JJ., agree.