2012 Ark. App. 86

**Jamie RUSSENBERGER, Appellant**

v.

**THOMAS PEST CONTROL, INC.; Marilyn Thomas Robison, Individually; Marilyn Robison d/b/a Thomas Pest Control, Inc.; Bobby Hill, Individually; Bobby Hill as "Operations Manager" of Thomas Pest Control, Inc.; Daryl Little, Director of the Arkansas State Plant Board; and Western Surety Company, Appellees.**

No. CA 11–808.

Court of Appeals of Arkansas.

Jan. 25, 2012.

John David Coulter and J. Don Overton, Little Rock, AR, for appellant.

Alex T. Gray and Megan D. Hargraves, Little Rock, AR, for appellee.

RITA W. GRUBER, Judge.

Appellant Jamie Russenberger appeals from the trial court's order dismissing her complaint against appellees Thomas Pest Control, Inc.; Marilyn Thomas Robison, individually; Marilyn Robison d/b/a Thomas Pest Control, Inc.; Bobby Hill, individually; Bobby Hill as "Operations Manager" of Thomas Pest Control, Inc.; and Western Surety Company.[1] For simplicity, we will refer to the first five parties as the Thomas appellees. The principal issue on appeal is whether appellant alleged facts in the complaint sufficient to support the doctrine of fraudulent concealment. Because we hold that the complaint does allege sufficient facts, we reverse the trial court's order dismissing this case and remand for further proceedings. Appellant also appeals from the court's order awarding attorney's fees to the Thomas appellees. In light of our decision reversing the court's order of dismissal, we also reverse its order awarding attorney's fees.

In our review of a case in which a plaintiff claims that the trial court erred in granting a motion to dismiss pursuant to Rule 12(b)(6), we treat the facts alleged in the complaint as true and view them in the light most favorable to the plaintiff. *Biedenharn v. Thicksten,* 361 Ark. 438, 441, 206 S.W.3d 837, 840 (2005). In viewing the facts in the light most favorable to the plaintiff, the facts should be liberally construed in the plaintiff's favor. *Id.* Our rules require fact pleading, and a com-

---

1. The trial court also granted the motion to dismiss filed by defendant Daryl Little, Director of the Arkansas State Plant Board. Appellant did not appeal from that order.

plaint must state facts, not mere conclusions, in order to entitle the pleader to relief. *Id.* Of particular import in this case, Arkansas law requires the complaint to contain facts sufficient to support the application of fraudulent concealment to toll the statute of limitations. *Floyd v. Koenig,* 101 Ark.App. 230, 231, 274 S.W.3d 339, 340 (2008). Finally, in testing the sufficiency of a complaint on a motion to dismiss, all reasonable inferences must be resolved in favor of the complaint, and the pleadings are to be liberally construed. *Carlson v. Kelso Drafting and Design, Inc.,* 2010 Ark. App. 205, at 1–2, 374 S.W.3d 726.

## I.

For appellant's first point on appeal, we turn to the allegations in her complaint. Appellees filed a motion to dismiss appellant's original complaint prompting appellant to file an amended complaint, which is at issue here. Appellant alleged the following in her amended complaint. She bought a home in Little Rock on November 18, 2004. Before purchasing the home, appellant contracted with appellee Thomas Pest Control, Inc. (TPC) to perform an inspection of the property for active and previous termite damage. TPC was a licensed, bonded, pest-control company regulated by the State of Arkansas. TPC performed an inspection on October 29, 2004, and on November 11, 2004, TPC (through Operations Manager Bobby Hill) delivered to appellant a "Clearance Letter" and a "Termite Contract" based on its inspection. Neither TPC's clearance letter nor the graph attached to the letter indicated any current or past damage or structural defects to the property. Relying on this clearance letter, appellant executed all necessary documents to purchase the home on November 18, 2004.

Appellant continued to contract annually with TPC from November 2004 through December 2009 to treat the property under the terms of the termite contract executed on November 11, 2004. Appellant alleged that she relied upon TPC's professionalism and license to perform inspections and treatments and to promptly notify her of any occurrence of current or previous termite, insect, or other damage it discovered. TPC never notified her of any current or previous damage to the property during any of the annual inspections and treatments from 2004 through 2009.

Then, in January 2010, appellant hired a contractor to remodel her kitchen and add a laundry room to the rear of her home. During the preliminary stages of this work, the contractor discovered damage to the substructure and subflooring of the kitchen area and informed appellant that the floor needed to be removed in order to have adequate access to perform the repairs. During this process, the contractor discovered termite and other damage to the structure. Appellant requested TPC to inspect and treat the property under its contract. TPC informed appellant that there was existing insect and structural damage, including the termite damage that TPC was previously aware of (and that appellant alleges TPC intentionally concealed and hid from her), and that TPC would not treat the home due to problems of clearance under the structure. TPC informed appellant that it was her responsibility to have the understructure of the home excavated before TPC would treat the structure.

Appellant then filed a complaint against TPC at the Arkansas State Plant Board (Plant Board). The Plant Board's inspector reported that TPC failed to comply with the laws, rules, and standards set forth by the Arkansas Legislature due to

various substandard issues including access, wood debris, clearance, shelter tubes, outside grade, and an area that was not drilled and treated as would have been required when TPC originally treated the home in 2000. The Plant Board issued a "pink slip" to Thomas listing repairs that must be made to bring the structure up to state minimum requirements. The state inspector indicated that there was severe damage to the understructure of the home and that he found previous termite damage, other insect damage, and rot under the structure. Appellant alleged that this was the first indication to her that there was any substructure insect damage to her home. The Plant Board issued three "pink slips" before TPC finally complied and cleared the area under the structure so that the state inspector could adequately inspect the home for damage.

Appellant filed a request under the Freedom of Information Act[2] with the Plant Board and learned that TPC had submitted a clearance letter in 2003 for a previous owner that showed extensive damage to the substructure of appellant's property in the form of active termites, other insects, mold, and fungi. Appellant also discovered that TPC had issued a "Termite Contract" to her on November 9, 2004 (dated two days before the date of the "Termite Contract" that TPC actually gave to her) based upon an inspection by Henry Thomas that was alleged to have occurred on October 29, 2004, the same date of the inspection in the termite contract that TPC provided to her. This November 9, 2004, contract—which was not provided to appellant—indicated current damage, past damage, and other structural defects to the structure. This contract also expressly stated that "TPC will repair damages caused by termites." Appellant's complaint alleged that this version was

never delivered to her and that TPC and Bobby Hill "retained possession of this document and actively, intentionally, and with malice concealed the existence of this document" from her until 2010. The graph attached to the contract showed the damaged areas and structural defects. The areas and extent of damage reflected on the Plant Board's graph from its 2010 inspection of appellant's property exactly matched the graph TPC filed with its "Termite Contract" on November 9, 2004.

Appellant alleged that TPC fraudulently concealed from her and failed to divulge to her that there existed previous active termite damage to the structure before she purchased it. She also alleged that TPC intentionally, continually, and with malice actively concealed and failed to divulge this information to her at any time during the six years that it was paid to treat the property under the annual termite contracts. She alleged that TPC committed fraud in failing to properly inspect the property; in failing to list any damage to the property; and, with the sole intent to defraud her, in issuing a clearance letter to her and her lending institution that was false and misleading. She alleged that TPC continued to conceal this information through the issuance of annual clearance letters showing no damage and communicating annually that there had never been any damage to the structure. She contended that TPC had a duty to disclose the true condition of the property and its failure to do so constituted fraudulent concealment. She alleged that her reliance upon TPC and its professional license caused her damages as set forth more specifically in the complaint.

Appellant's complaint also alleges breach of contract under the termite policy in November 2004 and the subsequent and

---

2. This Act is codified at Ark.Code Ann. §§ 25–    19–101 et seq.

annual fraudulent concealment of this breach. Appellant also alleged that Bobby Hill, as operator in charge of TPC and its license holder, and Marilyn Thomas Robison, as owner and president of TPC, failed to properly oversee the operations of TPC, insure the accuracy of the clearance letter to appellant, and properly train and educate TPC's employees. She contended that these failures constituted negligence and that they fraudulently concealed this negligence. Finally, she alleged that Western Surety issued two bonds on behalf of TPC, which are held at the Plant Board, and that, pursuant to Ark.Code Ann. § 17–37–210(a)(3)(B), "any person claiming against the bond may maintain an action at law against the licensee and the surety."

In the Thomas appellees' motion to dismiss, they contended that appellant's claims were barred by the statutes of limitation because they all arise from acts that allegedly occurred over six years before appellant filed her complaint: the statute of limitations is five years for a breach-of-contract action and three years for both negligence and fraud. Appellant did not dispute this but alleged that the limitations periods were tolled by the doctrine of fraudulent concealment. The Thomas appellees argued that appellant did not plead sufficient facts to support the doctrine of fraudulent concealment to toll the statutes of limitation because the doctrine requires that the fraud be "furtively planned and secretly executed." *See Bomar v. Moser*, 369 Ark. 123, 131, 251 S.W.3d 234, 241 (2007). They argued that appellant pleaded no facts evidencing this. Moreover, they claimed that appellant, not the Thomas appellees, owned and occupied the property. Therefore, they argued, they had no ability to conceal the damage from her and she had the ability to inspect her property for damage at any time. They also contended that the negligence

claim against Ms. Robison should be dismissed because she did not become the president and owner of TPC until August 2010. Finally, Western Surety argued that appellant's claim against it was not a recognized remedy at law and should be dismissed. The court entered an order stating only that the motion to dismiss of the Thomas appellees and Western Surety was granted; it provided no explanation for its decision. This appeal followed.

## II.

Appellant argues on appeal that she pleaded facts sufficient to support the application of fraudulent concealment and that the statutes of limitation were tolled in this case. The statute of limitations generally begins to run when the allegedly wrongful acts occurred—in this case, in 2004 when TPC inspected appellant's home, found evidence of damage, and failed to disclose this fact to appellant. *See Floyd v. Koenig*, 101 Ark.App. 230, 233, 274 S.W.3d 339, 342 (2008). However, fraud suspends the running of the statute of limitations until the party having the cause of action discovers the fraud, or should have discovered it by the exercise of reasonable diligence. *Delanno, Inc. v. Peace*, 366 Ark. 542, 545, 237 S.W.3d 81, 84 (2006). In order to toll the statute of limitations, the fraud perpetrated must be concealed. *Id.* The general rule of fraudulent concealment requires "some positive act of fraud, something so furtively planned and secretly executed as to keep the plaintiff's cause of action concealed, or perpetrated in a way that conceals itself." *Id.* (quoting *Shelton v. Fiser*, 340 Ark. 89, 96, 8 S.W.3d 557, 562 (2000)). Further, if the fraudulent concealment should have been discovered by the exercise of reasonable diligence, the suspension ceases as of the date it should have been so discovered. *Id.* at 546, 237 S.W.3d at 85.

The Thomas appellees argue that the supreme court's decision in *Delanno* supports the trial court's order dismissing appellant's complaint. In *Delanno,* the plaintiff's attorney mistakenly represented to the plaintiff that he had obtained a tax-clearance letter absolving the plaintiff from tax liability for an asset purchase the attorney was handling. A year after the purchase, the state notified the plaintiff that he owed taxes. When the plaintiff contacted his attorney regarding the matter, the attorney told him that there was a tax-clearance letter on file, that he owed no taxes, and that the attorney would take care of the matter. Three years later, the parties discovered that the attorney had inadvertently filed the tax-clearance letter with the wrong tax-identification number and that, due to the oversight, the plaintiff owed back taxes. Absent the doctrine of fraudulent concealment to toll the statute of limitations, the plaintiff's legal-malpractice action was barred by the statute of limitations. The supreme court affirmed the trial court's order granting summary judgment and finding no evidence of fraudulent concealment, holding that the plaintiff did not produce any evidence that the attorney's inaccurate statements were "furtively planned and executed, or concealed." *Delanno,* 366 Ark. at 547, 237 S.W.3d at 85–86. The supreme court also held that the plaintiff failed to exercise reasonable diligence. Three years before the mistake was discovered, the plaintiff was on notice that either the state or his attorney was incorrect, but he made no effort to contact the state to investigate the situation further.

This case is distinguishable from *Delanno.* First, *Delanno* involved a motion for summary judgment, not a motion to dismiss. The court in *Delanno* was concerned with the evidence offered by the plaintiff to prove fraudulent concealment.

Here, we look only at the sufficiency of the allegations in the complaint. We have no discovery, no testimony, and no evidence to review. Whether appellant will eventually prove the allegations is not our concern in this appeal. Secondly, the mistake in *Delanno* was inadvertent. The attorney neither intended to use the wrong tax-identification number on the clearance letter filed with the state nor knew that he had done so until well after the fact. And the plaintiff in that case was on notice from the state that the state and his attorney were in conflict about whether he owed the taxes.

In the case at bar, appellant alleged that TPC—a licensed, bonded, pest-control company regulated by the State of Arkansas—inspected the property on October 29, 2004. She alleged that TPC provided to her a clearance letter and termite contract dated November 11, 2004, stating that, based upon its inspection, there were no current or past damage or structural defects to the property. She alleged that she purchased the home in reliance upon this clearance letter and that she continued to contract annually with TPC from November 2004 through December 2009 to treat the property under the terms of the termite contract executed on November 11, 2004. TPC never notified her of any current or previous damage to the property during any of the annual inspections and treatments from 2004 through 2009. After hiring a contractor to remodel her home in 2010, appellant discovered another clearance letter directed to her that was filed with the Arkansas State Plant Board. This clearance letter and termite contract was dated November 9, 2004, two days before the clearance letter that TPC provided to her. She alleged that this document indicated current damage, past damage, and other structural defects to the structure. It also expressly stated that "TPC will repair damages caused by ter-

mites." Appellant's complaint stated that this version was never delivered to her and that TPC and Bobby Hill "retained possession of this document and actively, intentionally, and with malice concealed the existence of this document" from her until 2010. The attached graph showed the damaged areas and structural defects.

■ We note that the issue of fraudulent concealment is normally a question of fact that is not suited for dismissal by summary judgment or by a motion to dismiss. *Floyd,* 101 Ark.App. at 236, 274 S.W.3d at 343. In testing the sufficiency of appellant's complaint, we view the facts in the light most favorable to the plaintiff; all reasonable inferences must be resolved in favor of the complaint; and the pleadings are to be liberally construed. *Carlson,* 2010 Ark. App. 205, at 1–2, 374 S.W.3d 726. Liberally construed, the facts alleged here do not suggest that the mistake in this case was inadvertent. Appellant alleged that TPC had knowledge of the termite damage before it provided a clearance letter to her in November 2004 assuring her that there was no damage. In spite of this fact, TPC continued to assure appellant every year through annual contracts that her property had no current or past termite damage or structural defects. With regard to the Thomas appellees' argument that appellant owned the home and should have, by the exercise of reasonable diligence, discovered the damage, we disagree. Appellant alleged that she did not discover the damage until she hired a contractor to remodel. The fact that the Arkansas Plant Board issued numerous "pink slips" to TPC because it was unable to inspect the property until it was adequately cleared by TPC suggests that the damage was difficult to see, even for a professional. Appellant hired TPC, a professional, to inspect, treat, and advise her regarding insect damage. Unlike the plaintiff in *Delanno,* appellant was not notified that the state, or anyone else, disputed TPC's representations to her.

After our review of these allegations, we hold that appellant has alleged facts sufficient to support the application of fraudulent concealment and that the trial court erred in granting the motion to dismiss. With regard to the negligence count against Ms. Robison, the parties are arguing disputed facts about her involvement in TPC, the state of TPC's corporate charter, and the events giving rise to appellant's claims. While we express no opinion regarding the evidence necessary to prove her claim, appellant has alleged sufficient facts to survive a motion to dismiss.

## III.

We also reverse the court's order dismissing appellant's complaint against Western Surety. Appellant alleged that TPC furnished to the Arkansas State Plant Board a bond issued by Western Surety on TPC's behalf. Under the Arkansas Pest Control Law, TPC is required to furnish a surety bond to the Arkansas State Plant Board. Ark.Code Ann. § 17–37–210 (Repl.2010). This bond is in favor of the State of Arkansas "for the benefit of any person damaged as the result of a violation of this subchapter by an operator licensed under this chapter and for the benefit of any person who, after entering into a contract with the licensee, is damaged by the failure of the licensee to properly perform the contract." Ark.Code Ann. § 17–37–210(3)(A). A person claiming against the bond may maintain an action at law against the licensee and the surety. Ark.Code Ann. § 17–37–210(3)(B).

## IV.

Finally, appellant contends that the court abused its discretion in awarding attorney's fees to the Thomas appellees.

310

The Thomas appellees argued that they were entitled to fees pursuant to Ark.Code Ann. § 16–22–308, which authorizes the court to award fees to the prevailing party in a breach-of-contract action. In light of our decision reversing the court's order dismissing appellant's complaint, we reverse the court's award of attorney's fees.

Reversed and remanded.

MARTIN and BROWN, JJ., agree.