Cite as 2025 Ark. App. 132
# ARKANSAS COURT OF APPEALS
DIVISION I
No. CV-23-582

| | |
|---|---|
| JOHN ROBERT DAVOUST<br>    APPELLANT/CROSS-APPELLEE<br><br>V.<br><br>MARY ELIZABETH LEGG AND<br>WILLIAM PATRICK DAVOUST<br>    APPELLEES/CROSS-APPELLANTS | Opinion Delivered February 26, 2025<br><br>APPEAL FROM THE CARROLL<br>COUNTY CIRCUIT COURT,<br>EASTERN DISTRICT<br>[NO. 08EPR-22-65]<br><br>HONORABLE SCOTT JACKSON,<br>JUDGE<br><br>AFFIRMED ON DIRECT APPEAL;<br>REVERSED IN PART AND REVERSED<br>AND REMANDED IN PART ON<br>CROSS-APPEAL |

### WAYMOND M. BROWN, Judge

This appeal concerns the interpretation of the Thorpe Family Revocable Trust (Trust)

created by Robert Charles Thorpe and Mary Lee Thorpe, husband and wife, on January 11,

1996. At the time of the Trust's creation, Robert had two children[1] from a previous

marriage, and Mary had nine children[2] from a previous marriage. The Trust listed Robert

and Mary as beneficiaries during their lifetime, and thereafter, all eleven children were to be

beneficiaries. Robert was listed as the trustee and Mary was listed as successor trustee.

---

[1]Allison Dunkle and Amy Whisenant.

[2]William Patrick Davoust, Deborah Durham, James Davoust, Michael Davoust, John
Davoust, Philip Davoust, Michele Davoust, Mary Legg, and Paul Davoust.

Appellee Mary Legg was to be trustee following Mary, and Allison was to take on the role after Legg. Robert died on April 21, 2011. After Robert's death, Mary became trustee. Mary made three amendments to the trust: on May 11, 2014;[3] on March 10, 2017;[4] and on October 14, 2020.[5] Mary died on April 25, 2022. A probate estate was opened at which time the information concerning the Trust and its amendments came to light, resulting in a challenge by appellees concerning Mary's right to amend the Trust following Robert's death. The Carroll County Circuit Court agreed with appellees that Mary could not amend the Trust following Robert's death and granted summary judgment in their favor. This prompted appellant to file his notice of appeal. In a subsequent order, the circuit court found that Legg and appellant were co-trustees of the Trust pending further orders of that court or this court. It also found that appellant should be allowed to continue to live on the Trust property without paying rent. This order led to appellees' cross-appeal. Appellant argues that the Trust was revocable and that Mary had the authority to modify the Trust until her death. Alternatively, he argues that appellees' contest of the Trust was barred by

_____

[3]In this amendment, Mary removed Robert's children and William as beneficiaries; it removed William as Legg's successor and replaced him with appellant; and it granted appellant one and a half shares of the Trust's assets, St. Paul Episcopal Church one-half share of the Trust's assets, and the rest of her children one share of the Trust's assets.

[4]This amendment named appellant as the successor trustee following Mary and named Legg as his successor; appellant was granted two shares of the Trust's assets, and St. Paul Episcopal Church was removed as a beneficiary.

[5]This amendment removed all beneficiaries except appellant.

the three-year statute of limitations found in Arkansas Code Annotated section 28-73-604(a)(1).[6] Appellees argue that the circuit court improperly named Legg and appellant as co-trustees and improperly authorized appellant to live rent-free on Trust property.[7] We affirm on direct appeal; we reverse in part and reverse and remand in part on cross-appeal.

At issue is Article IX, section 9.02 of the Trust, which states:

> AMENDMENT. Grantors reserve the right at any time or from time to time, without the consent of any person other than Grantors and without notice to any person other than Trustee, to amend, modify or revoke the Trust hereby created in whole or in part, to change the beneficiaries hereof, or to withdraw the whole or any part of the Trust Estate by filing written notice of such revocation, modification, change, or withdrawal with Trustee[.] Provided, however, that the terms of this Trust may not be modified by Grantors in such manner as to increase the obligations for Trustee without Trustee's written consent. The foregoing right shall be in Grantors only, and not in any duly appointed attorney-in-fact. Upon the death, permanent disability or resignation of Grantors as Trustee, this Trust shall be irrevocable and shall not be modified in whole or in part by any person and all rights and powers of Trustee herein shall thereupon vest in and be thereafter exercised by the Successor-Trustee.

Both parties filed competing motions for summary judgment. Appellees argued that the Trust's plural use of grantors when addressing the right to amend, modify, or revoke the Trust in whole or in part, to change the beneficiaries, or to withdraw the whole or any part of the Trust estate means that both original grantors had to consent to the change; and after Robert died, he was no longer able to consent, making Mary's actions unauthorized and in contradiction of the Trust. Appellant maintained that the Trust's plural use of grantors when addressing when the Trust becomes irrevocable supports his contention that Mary had

---

[6](Repl. 2005).
[7]This argument is contingent on this court affirming on direct appeal.

the right to make changes to the Trust until her death. He also argued that Article III sections 3.02 (life estate), 3.04B (benefit for grantor's wife) and 3.05 (life estate to the surviving grantor) support his contention that Mary was able to modify the Trust until her death. Alternatively, he argued that if the Trust became irrevocable in 2011 as appellees contend, they only had three years to contest the Trust, and this action was commenced long after that three-year period. The circuit court held a hearing on the competing motions on January 17, 2023. After listening to arguments presented by each side, the circuit court took the matter under advisement. It filed an order on May 11, 2023, stating the following in pertinent part:

> 1. The intent of the Grantors to the Thorpe Family Trust, Robert Charles Thorpe and Mary Lee Thorpe, was to provide for the Grantors during their lifetimes. Upon the death of the survivor of the Grantors, the remaining trust assets would be distributed to Grantors' children in equal shares. Grantors each had children from previous marriages.

> 2. Pursuant to Section 9.02 of the Torpe Family Trust, the Grantors had the right "to amend, modify or revoke . . . or to change beneficiaries hereof.["] The plural "Grantors" is consistently used in this section of the trust.

> 3. Based upon the Grantors stated intent and the use of the plural in Section 9.02, this court finds that in order to change the beneficiaries to this revocable trust, both Grantors must agree or the modification is ineffective.

> [4.] Upon the death of Robert Charles Thorpe, the beneficiaries named in the Thorpe Family Trust became irrevocable and any subsequent modifications of the named beneficiaries by Mary Lee Thorpe were ineffective.

The circuit court granted appellees' motion for summary judgment and denied appellant's motion. Appellant timely appealed.

4

Appellee Legg filed an emergency motion to be named as trustee and to require appellant to account for trust assets on May 15. The circuit court held a hearing on Legg's motion on July 11. At the onset of the hearing, the circuit court admitted that the "way the Trust document used the term Grantors was confusing at times, but the intent of the Grantors was not confusing on the Court." The circuit court stated that it was the intent of the grantors that their children share equally in the remaining assets of the Trust. The circuit court entered an order on July 12 naming Legg and appellant as co-trustees of the Trust and allowing appellant to continue to stay on Trust property without paying rent. Appellees timely appealed this order.

Summary judgment may be granted by a circuit court only when there are no genuine issues of material fact to litigate and when the case can be decided as a matter of law.[8] The purpose of summary judgment is not to try the issues but to determine whether there are any issues to be tried.[9] Normally, we determine if summary judgment is proper by deciding whether evidentiary items presented by the moving party leave a material question of fact unanswered, viewing all evidence in favor of the nonmoving party.[10] However, in cases such as this where the parties do not dispute the essential facts, we simply determine whether the

[8]*Smith v. St. Paul Fire & Marine Ins. Co.*, 76 Ark. App. 264, 64 S.W.3d 764 (2001).

[9]*Akers v. Butler*, 2015 Ark. App. 650, 476 S.W.3d 183.

[10]*Selrahc Ltd. P'ship v. SEECO, Inc.*, 2009 Ark. App. 865, 374 S.W.3d 33.

moving party was entitled to judgment as a matter of law.[11] When parties file cross-motions for summary judgment, "they essentially agree that there are no material facts remaining, and summary judgment is an appropriate means of resolving the case."[12] As to issues of law presented, our review is de novo.[13]

The rule we follow with regard to the construction of a trust is that the intent of the settlor governs, and the intent is to be determined within the four corners of the instrument, considering the language used and giving meaning to all provisions whenever possible.[14] We will only consider collateral evidence when there is uncertainty about the settlor's intentions from looking at the language of the instrument.[15] The determination of whether there is an ambiguity is a matter of law.[16] We review a circuit court's conclusion on a question of law de novo.[17]

Appellant contends that until Mary's death, the Trust was both revocable and modifiable. However, he concedes that the portion of section 9.02 dealing with the language

---

[11]*Id.*

[12]*Douglas Cos., Inc. v. Walther*, 2020 Ark. 365, at 5, 609 S.W.3d 397, 400.

[13]*Id.*
[14]*Hartsfield v. Blann*, 2013 Ark. App. 487.

[15]*Id.*

[16]*Id.*

[17]*Id.*

relied on by appellees and the circuit court required both grantors to be living. He maintains that the portion of section 9.02 which states, "Upon death, . . . of Grantors as Trustee, this Trust shall be irrevocable and shall not be modified in whole or in part by any person and all rights and powers of Trustee herein shall thereupon vest in and be thereafter exercised by the Successor-Trustee[,]" makes it clear that the Trust became irrevocable after both grantors died. Even if the Trust was to become irrevocable upon the death of both grantors, all parties agree that, per the Trust, both parties had to be living and consent to amend, modify, revoke, change the beneficiaries, or withdraw any part of the Trust estate. Thus, Mary could not amend the Trust to change the beneficiaries following Robert's death because he could not consent to it.[18] Because Mary could not make the changes to the Trust's beneficiaries following Robert's death, appellees were entitled to summary judgment as a matter of law. We affirm.

Appellant also relies on other portions of the Trust to support his claim that the Trust was modifiable until Mary's death. However, those sections are inapplicable to the facts at hand. There is no indication that Mary had any special needs, attempted to move assets of the Trust, or deplete the Trust's funds during her lifetime, which she had the right to do. Therefore, appellant's argument relying on other portions of the Trust is without merit.

---

[18]*See Id.*

7

Alternatively, appellant contends that appellees' action contesting the Trust was barred by the three-year statute of limitations found in section 28-73-64(a)(1).[19] This issue is not preserved. Although appellant made this argument to the circuit court, he did not obtain a ruling. It is an appellant's responsibility to obtain a ruling to preserve an issue for appeal.[20] If there is no ruling by the circuit court on an issue, there is nothing for this court to review and determine.[21]

On cross-appeal, appellees contend that the circuit court erred by naming appellant as Legg's co-trustee. As per the Trust, Legg was to succeed Mary as trustee, and she was not to share that role with appellant or anyone else. Therefore, the circuit court erred in naming appellant as Legg's co-trustee, and we reverse on that portion of the order.

Appellees also argue that the circuit court erred by allowing appellant to stay on the Trust property, consisting of approximately 120 acres, rent-free. According to the provisions of the Trust, all eleven beneficiaries were to equally divide the Trust assets, including the property. The Trust did not award appellant the home. Therefore, it was erroneous for the circuit court to allow him to remain living on the property without paying rent. We reverse and remand for the circuit court to determine the appropriate rental value and for that value to be deducted from appellant's share when the Trust assets are distributed.

---

[19]A challenge to the validity of a revocable trust must be commenced within three years of the settlor's death.

[20]*Matthew v. Matthew*, 2021 Ark. App. 411.

[21]*Peck v. Peck*, 2019 Ark. App. 190, 575 S.W.3d 137.

Affirmed on direct appeal; reversed in part and reversed and remanded in part on cross-appeal.

ABRAMSON and HIXSON, JJ., agree.

*Matthews, Campbell, Rhoads, McClure & Thompson, P.A.*, by: *George R. Rhoads* and *Sarah L. Waddoups*, for appellant/cross-appellee.

*Taylor Law Partners LLP*, by: *Andrew J. Myers*, for appellees/cross-appellants.